Frederick SOSKEL and Milton A. Woocher, on behalf of themselves, and all others similarly situated, Plaintiffs,

v.

TEXACO, INC., Defendants.

No. 80 CIV 1272 (LBS).

United States District Court,
S. D. New York.

May 24, 1982.

---

Elliot D. Woocher, White Plains, N. Y., for plaintiffs.

Robert F. McGinnis, White Plains, N. Y., for defendants.

## OPINION

SAND, District Judge.

The parties seek approval of a settlement of a putative but uncertified class action which would provide neither notice nor benefit to the class but which would provide for the payment of a fee of $10,000 to plaintiffs' counsel. The plaintiffs do not assert that the action lacks merit but claim that events subsequent to its commencement significantly diminish the economic incentives to pursue the claim. We are therefore called upon, pursuant to the mandate of F.R.Civ.P. 23(e) to determine, in the exercise of our discretion and "after a careful inquiry into the circumstances surrounding the proposed settlement" (*Shelton v. Pargo, Inc.*, 582 F.2d 1298 (4th Cir. 1978)), whether the settlement should be approved.

## I

In March, 1980, the named plaintiffs commenced this suit on behalf of the class of Texaco credit card holders in the New York-New Jersey-Connecticut tri-state area. There are approximately 1,100,000 such persons. The plaintiffs charged Texaco with the sale of gasoline at a price in excess of the ceiling imposed by federal law. Plaintiffs sought money damages in addition to injunctive relief. Plaintiffs have never moved for certification of the class.

On January 28, 1981, federal price and allocation controls were discontinued, thereby rendering the claim for injunctive relief unnecessary. Plaintiffs contend that the unforeseen limitation of this litigation to the claim for damages makes it "prohibitively costly." Affidavit of Elliot D. Woocher at ¶ 10. They note that the case "involve[s] difficult and complex factual, procedural and legal issues" which are now out of proportion to the potential recovery. *Id.* at ¶ 11.

The proposed settlement would dismiss the instant case without prejudice to the putative class members and with prejudice to the two named plaintiffs. Plaintiffs state that they were unable to negotiate any settlement on behalf of the putative class, since the defendant was prepared to litigate the claims and has firmly held the position that the claims lacked merit. *Id.* at ¶ 14. Plaintiffs state that, under the terms of the settlement, they "will receive no consideration allocable to the claims of the alleged class." Nevertheless, the settlement provides for payment of $10,000 to plaintiffs' attorney (who has the same surname as one of the named plaintiffs) to offset the expenses of bringing this suit.

The settlement is proposed after plaintiffs' counsel undertook some discovery, defeated defendant's motion for summary judgment and unsuccessfully attempted to interest the Attorney General of the State of New York in intervening or participating in the litigation.

Thus, in essence, we are faced more with an abandonment than a settlement. Plaintiffs have reassessed the potential profitability of their undertaking and seek to escape from its burdens. Not content merely with relief from these burdens, however, they also seek reimbursement for attorney's fees and other legal expenses.

■ Federal Rule of Civil Procedure 23(e) requires court approval before a class action may be dismissed. Approval is needed even where the class has not yet been certified, since potential for abuse exists even at that stage. *See Shelton v. Pargo, Inc.*, 582 F.2d 1298, 1314–16 (4th Cir. 1978); *Sheinberg v. Fluor Corp.*, 91 F.R.D. 74, 75 (S.D.N.Y.1981); *see also Oscar Gruss & Son v. Geon Industries, Inc.*, 89 F.R.D. 32 (S.D.N.Y.1980). Indeed, in some respects, such dangers are most acute at this stage in the proceedings. Class action allegations may provide plaintiffs with leverage in settlement negotiations: a defendant may choose to "buy out" the named plaintiff, in hope that the other class members will either neglect to bring their own claims or choose to avoid the burdens of complex litigation. Therefore, even though the court's role in protecting class members is substantially diminished by the lack of prejudice to their claims, the court must guard against abuse of the class action device. *See Shelton v. Pargo, Inc.*, 582 F.2d 1298 (4th Cir. 1978).

In *Sheinberg v. Fluor Corp.*, 91 F.R.D. 74 (S.D.N.Y.1981), this Court permitted an attorney who had reconsidered the wisdom of instituting a class action to discontinue that action after learning that the authority upon which he principally relied had been withdrawn. However, in that case, the attorney had simply realized that his claim lacked merit, and he made no attempt to recover his costs. The case at hand differs in two important respects. First, these plaintiffs do not now contend that the case

lacks merit. Rather, they contend that a valid claim for damages does not provide sufficient economic incentives for them to continue. Second, the attorneys seek to recover compensation for their efforts in pursuing this claim on behalf of the putative class for which they have recovered nothing.

Before even reaching the question whether notice need be given to the members of the putative class, the court must make a preliminary determination whether the proposed settlement is "within the range of possible approval." *Manual for Complex Litigation*, § 1.46 (1977).

■ In determining whether the proposed settlement falls within the acceptable range, the court must examine provisions for attorney's fees as well as any proposed recovery to the class members. *See Magana v. Platzer Shipyard, Inc.*, 74 F.R.D. 61, 79 (S.D.Tex.1977). Indeed, courts must closely scrutinize the reasonableness of payments to attorneys, since their interests may frequently diverge from those of the class. *See Developments in the Law—Class Actions*, 89 Harv.L.Rev. 1318, 1552–76 (1976). The present case illustrates just such a divergence of interests: the putative class retains a colorable claim, but the attorney finds it economically unfeasible to pursue that claim. The Court must examine whether the proposed settlement is fair and reasonable to the class, recognizing that the attorney who brought this action undertook a fiduciary duty to that class. *See Shelton v. Pargo, Inc.*, 582 F.2d 1298, 1305 (4th Cir. 1978). We find that recovery of $10,000 in legal expenses is unreasonable in the absence of any recovery for the class.[1]

■ The Court, therefore, finds that the proposed settlement falls outside of the acceptable range and, without reaching the issue of notice, denies the instant applica-

---

**1.** In the light of counsel's activities set forth *supra* at p. 2, the fee proposed would not, on its face, appear out of line were there some benefit to the class. We do not espouse the view, advocated by some commentators but rejected in *Shelton v. Pargo, Inc.*, 582 F.2d at 1315, that "merely because the settlement involved some

payment to the plaintiff [whose interests here coincide with that of counsel], notice must be given in "any event". The fee payment does, however, subject the settlement to closer scrutiny because of the possibility of the abuses which F.R.Civ.P. 23(e) was designed to preclude.

tion for approval of settlement. In so holding, we do not intend to foreclose these litigants from pursuing some form of settlement which would offer the putative class some benefit in proportion to the value of its claim.[2] The vastness of the putative class (1,100,000 members) does not necessarily preclude such a settlement, which could, for example, take the form of a contribution to a non-profit civic association concerned with matters of interest to the putative class. Even a published notice informing putative class members of the existence of a possible legal claim would in and of itself provide some form of benefit to the class members.[3]

Moreover, we do not necessarily bind this attorney to continue to litigate this action unwillingly. Plaintiffs' attorney could move to withdraw as counsel and could propose some form of notice inviting substitute counsel to enter into this action.

## II

Our concern with the appropriateness of this settlement and our discussion of possible abuses are not intended in any way to reflect upon the good faith or integrity of counsel herein. We urge that, with the benefit of this expression of the Court's views, the parties repair to the negotiating table to see whether some constructive and imaginative thinking can produce a settlement which better satisfies the needs of the situation.

The parties are to advise the Court within forty-five (45) days of their intentions with respect to the future course of this litigation and a proposed time table for such proceedings.

Application denied.

SO ORDERED.

**2.** Plaintiffs are of course correct in suggesting that "the terms of the proposed disposition would place absent members of the putative class in a more favorable position than they would be [in] if the representative character of this litigation were terminated by a so-called 'involuntary termination', such as denial of certification. It appears generally well settled that in the latter situations, notice to the putative class is not required." Supplementary Affidavit of Elliot D. Woocher, Esq., p. 2 n. But as noted *supra*, we are not precluding a settlement. Moreover, no valid basis has been suggested why certification might be denied here.

**3.** At the Court's request, the defendant has furnished an "Affidavit as to Burden to Texaco, Inc. Re: Notice to Putative Class." Texaco advises that of the 1,100,000 class members, 300,000 receive a monthly billing and could be advised of the settlement in a statement included in such billing. Texaco estimates it would cost $176,000 to identify and mail notices to the remaining 800,000 putative class members. Including the statement in bills sent in successive months would not obviate the problem since "[a]nnually the total number of Texaco credit card purchasers within the class is estimated to be about 50 percent." Affidavit as to Burden, p. 2.