Sandy **LEWIS, on behalf of himself and all others similarly situated, Plaintiff,**

v.

**Martin TULLY, et al., Defendants.**

No. 81 C 3833.

United States District Court, N.D. Illinois, E.D.

Oct. 31, 1983.

---

Harvey Melinger, Chicago, Ill., for plaintiff.

Mark Davis, Asst. State's Atty., Chicago, Ill., for county defendants.

Jennifer Duncan-Brice, Asst. Corp. Counsel, Chicago, Ill., for City of Chicago defendants.

## MEMORANDUM OPINION

PRENTICE H. MARSHALL, District Judge.

Plaintiff Sandy Lewis alleges that he was arrested without probable cause on March 28, 1981 and held in custody on suspicion of being one "Murray Brown, alias Michael Lewis," a person wanted for possession of controlled substances. Lewis asserts that the police determined through fingerprints that he was not Murray Brown but nevertheless charged him with Brown's alleged offenses and transported him to the Cook County Department of Corrections (CCDOC) jail at 26th Street and California Avenue. The following day, Lewis appeared in Holiday Court at 26th and California under the name of Murray Brown, and bond was set at $30,000. On March 30, the Cook County Sheriff's Police transported him to the Sixth District of the Circuit Court of Cook County, Illinois, held at Markham. At 10:30 a.m. on that day, a judge found that Lewis was not Murray Brown and discharged Lewis. Despite this, Lewis was kept in custody at Markham until 6:15 p.m. that evening at which time he was transported back to the CCDOC jail. He was released from custody at 10:00 p.m. the same evening after processing.

This action began as a damage action by Lewis against various Chicago and Cook County officials and police officers. Plaintiff alleged that he had been falsely arrested and held. Plaintiff thereafter was granted leave to amend count 5 of his complaint, which contained his claim for damages for wrongful imprisonment without probable cause after his judicial discharge in Markham. The amended count 5 contained a request for injunctive relief, alleging that Cook County had a policy of keeping persons like Lewis in custody after a court had discharged them. Lewis sought certification of a class of persons who in the future might be held in custody and discharged by a judge of the Circuit Court of Cook County, and he asked for an injunction barring the county from continuing its alleged practice.

Defendants contested class certification, arguing that any claim Lewis had for injunctive relief was moot and that as to the putative class, there was no sufficient immediacy and reality to the allegations of future potential injury to warrant invocation of the jurisdiction of the federal courts under article III of the Constitution. See Lewis v. Tully, 96 F.R.D. 370, 372 (N.D.Ill. 1982). Defendants also argued that plaintiff and the class had failed to establish the prerequisites to class certification under Fed.R.Civ.P. 23. On November 10, 1982, we granted Lewis' motion to certify a class, although we modified the definition of the class. Id. at 372–78.

Our November 10 opinion contained a substantial discussion of the mootness and standing issues raised by the defendants. We held that since plaintiff purported to represent a class of similarly situated persons, the fact that he was no longer unlawfully in custody did not bar his claim, since under Gerstein v. Pugh, 420 U.S. 103, 110–11 n. 11, 95 S.Ct. 854, 861 n. 11, 43 L.Ed.2d

54 (1975), the constant existence of a class suffering the wrong guaranteed that a "live" issue would exist throughout the lawsuit. Also, under *Gerstein,* we held that the absence of a concrete personal stake in prospective relief on the part of plaintiff was not fatal under article III. *Lewis v. Tully,* 96 F.R.D. at 372–75. As there was evidence of an affirmative policy to keep discharged prisoners in detention, at least in certain districts of the circuit court, the prospect of future injury to those in the class was not speculative.

This past Term, the Supreme Court held in *City of Los Angeles v. Lyons,* —— U.S. ——, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) that a plaintiff who had been subjected to the allegedly unconstitutional use of a "chokehold" by Los Angeles Police did not have standing to seek an injunction against future use of the chokehold. The *Lyons* decision prompted a motion by defendants here to dismiss the class' injunctive relief claims. We are invited by this motion to reconsider our November 10 ruling on article III standing in light of *Lyons.* In addition, as will become clear in this opinion, *Lyons* also dictates reconsideration of our decision to certify a class.

I

The lower federal courts have, in recent years, struggled with the related doctrines of standing, mootness, and ripeness, due in no small part to seemingly conflicting signals from the Supreme Court. *Compare Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) *with United States v. SCRAP,* 412 U.S. 669, 689, 93 S.Ct. 2405, 2416, 37 L.Ed.2d 254 (1973); *Valley Forge Christian College v. Americans United for the Separation of Church and State, Inc.,* 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982) *with Flast v. Cohen,* 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968).[1] One of the arguments defendants make in the present motion is that our earlier opinion in this case improperly analyzed the standing

issue here as one of mootness rather than one of likelihood of future injury. We do not think that the various aspects of the article III "case or controversy" inquiry are so easily separable. We will therefore begin our inquiry with a review of the pertinent Supreme Court decisions and an attempt to draw from them the principles that should govern our analysis of plaintiffs' request for injunctive relief here.

■ The basic article III requirement for standing is that a plaintiff can invoke the jurisdiction of a federal court only where he or she has suffered some actual injury due to the putatively illegal conduct or is threatened with injury by that conduct. *E.g., Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). Only in those circumstances can the plaintiff demonstrate that "personal stake in the outcome" that "assure[s] that concrete adverseness which sharpens the presentation of issues" necessary for the proper resolution of constitutional questions. *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962); *City of Los Angeles v. Lyons,* —— U.S. ——, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983). The injury or threat of injury on which the plaintiff relies must be "real and immediate," not "conjectural" or "hypothetical." *Lyons,* 103 S.Ct. at 1665. *See also, e.g., Golden v. Zwickler,* 394 U.S. 103, 109–10, 89 S.Ct. 956, 960, 22 L.Ed.2d 113 (1969); *United Public Workers v. Mitchell,* 330 U.S. 75, 89–91, 67 S.Ct. 556, 564–65, 91 L.Ed. 754 (1947).

■ One aspect of standing is what has been termed the "ripeness" doctrine. Ripeness is an issue that arises when the plaintiff challenges a statute, policy, or practice that has not yet been applied to him or her. An example of the application of this doctrine is *United Public Workers v. Mitchell.* In that case, government employees sought declaratory relief from allegedly unconstitutional restrictions imposed on their right to engage in political activity. However, the law they challenged had not yet been

---

1. *See United States Parole Comm'n v. Geraghty,* 445 U.S. 388, 406 n. 11, 100 S.Ct. 1202, 1214 n. 11, 63 L.Ed.2d 479 (1980) ("We concede that the prior cases [on standing] may be said to be somewhat confusing, and that some, perhaps, are irreconcilable with others.").

applied so as to restrict their conduct, and they described only in general terms what they planned to do in the future that they claimed would be prohibited by the statute. The Court held that the case was not yet ripe for adjudication, but that it might be in the future, after the employees had engaged in or at least planned particular conduct and framed their claims more narrowly. The ripeness doctrine, the Court stated, is based on the need for courts, mindful of the separation of legislative and judicial powers, to confine their decisions as to the constitutionality of legislation to well-defined controversies over specific issues. *Mitchell,* 330 U.S. at 90–91, 67 S.Ct. at 564–65. The same considerations apply where state or local statutes or policies are implicated. In *Poe v. Ullman,* 367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961), the Court held that a challenge to a state's prohibition of contraceptive devices and the giving of medical advice relating to such devices was not ripe, as there was no realistic threat of enforcement of the law against the plaintiffs. In a plurality opinion, the Court stated that it had " 'no right to pronounce an abstract opinion upon the constitutionality of a State law. Such law must be brought into actual, or threatened operation upon rights properly falling under judicial cognizance, or a remedy is not to be had here.' " *Id.* at 504, 81 S.Ct. at 1756 (plurality opinion) (quoting *Georgia v. Stanton,* 73 U.S. (6 Wall.) 50, 75, 18 L.Ed. 721 (1867)).[2]

■ The flip side of the ripeness doctrine is the doctrine of mootness, which looks backward to determine whether a live controversy still exists between the parties. Generally, mootness is in issue when the plaintiff complains of past conduct that has no lingering effects on him or her. To the extent that the lawsuit seeks an award of damages for past wrongs, mootness does not pose a problem for the plaintiff. How-

ever, the core idea of the mootness doctrine is that past injury cannot serve as the basis for a claim against future wrongdoing, absent continuing harm or a prospect of future harm.[3] *See generally Murphy v. Hunt,* 455 U.S. 478, 481–83, 102 S.Ct. 1181, 1182–84, 71 L.Ed.2d 353 (1982) (convicted criminal does not have "live" claim for injunctive relief concerning failure of court to grant him pretrial bail). Mootness has been defined as " 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence.' " *United States Parole Commission v. Geraghty,* 445 U.S. 388, 397, 100 S.Ct. 1202, 1209, 63 L.Ed.2d 479 (1980) (quoting Monaghan, *Constitutional Adjudication: The Who and When,* 82 Yale L.J. 1363, 1384 (1973)).

■ The idea behind the ripeness doctrine comes into play in the analysis of an exception the courts have carved out of the mootness doctrine for cases in which the ultimate issue is "capable of repetition, yet evading review." Where the challenged action is too short in duration to be fully litigated prior to its cessation or expiration, and there is a reasonable expectation that the same plaintiff will be subjected to the same action again, the plaintiff has standing to challenge the allegedly illegal action, even absent a present actual controversy between the parties. For example, in *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), the plaintiff challenged a state's restriction on her right to obtain an abortion. By the time the case could be adjudicated, she was no longer pregnant.[4] She did not seek damages for the past application of the statute to her but rather asked only for declaratory and injunctive relief against future operation of the statute. *See Roe v. Wade,* 314 F.Supp. 1217,

---

**2.** Although the *Poe* opinion from which we quote was subscribed to by only four justices, Justice Brennan concurred, agreeing that the case was not ripe for adjudication. *Poe,* 367 U.S. at 509, 81 S.Ct. at 1759.

**3.** However, the existence of past harm is relevant in showing the likelihood of future harm.

*See Kolender v. Lawson,* —— U.S. ——, 103 S.Ct. 1855, 1857 n. 3, 75 L.Ed.2d 903 (1983).

**4.** The Supreme Court's opinion in *Roe* does not disclose whether the plaintiff gave birth to the child, suffered a miscarriage, or obtained an abortion.

1220 (N.D.Tex.1970) (three-judge court). The Court held that the case was not moot, based on the "capable of repetition" doctrine, stating that "[p]regnancy often comes more than once to the same woman .... Pregnancy provides a classic justification for a conclusion of nonmootness." *Id.* at 125, 93 S.Ct. at 713. *See also, e.g., Weinstein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 348, 46 L.Ed.2d 350 (1975) (per curiam) (action challenging adequacy of procedures accorded prospective parolees; plaintiff who was paroled after lawsuit commenced cannot maintain action for injunctive relief because there is no "demonstrated probability" that he would again be among those subject to the parole system); *Murphy v. Hunt,* 455 U.S. at 483, 102 S.Ct. at 1183–84 (convicted criminal challenging state limitation of bail in cases involving certain offenses cannot maintain action challenging denial of pretrial bail because there is no "reasonable expectation" that he would be in the same position again); *Nebraska Press Association v. Stuart,* 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976) (challenge to expired court order restricting press access to criminal trial was not moot because of possibility of new trial in case in which order was entered and likelihood of recurrence of same dispute between plaintiff and state in future).

The "capable of repetition" doctrine has developed as a means of accommodating cases that could never be fully litigated before becoming technically moot, due to the transitory nature of the harm caused by the challenged conduct. *See Southern Pacific Terminal Co. v. Interstate Commerce Commission,* 219 U.S. 498, 514–15, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911) (short term ICC orders would avoid review altogether because they would expire by their own terms before Supreme Court could hear the case). However, until *Lyons* the Court had never asserted that a constitutional challenge to a state statute or practice does not "evade review" due to the availability of a damage action for past harm. Presumably

in *Roe. v. Wade* the plaintiff could have "challenged" the state restriction on abortion by filing an action for damages; had she done so that action could not have become moot due to the passage of time. *See* L. Tribe, American Constitutional Law 63 (1978) (noting that in one sense, "the mootness bar is merely a trap for unwary litigants who fail to seek damages in addition to equitable relief"). Thus, the Court could have held in *Roe* that although the plaintiff's problem was "capable of repetition," it did not "evade review." In *Lyons,* however, the Court appeared to analyze this problem in a manner more restrictive to plaintiffs. The court of appeals in *Lyons* had stated that Lyons had a "live and active claim" for injunctive relief, if only for the few seconds he was actually subject to the chokehold. *Lyons v. City of Los Angeles,* 615 F.2d 1243, 1248 (9th Cir.1980). The court held that despite the "mootness" of this short-lived claim, plaintiff could still maintain a claim for injunctive relief because such a claim was "capable of repetition, yet evading review." *Id.* at 1249. The Supreme Court rejected this analysis, stating that "Lyons' claim that he was illegally strangled remains to be litigated in his suit for damages; in no sense does that claim 'evade' review." *Lyons,* 103 S.Ct. at 1669.[5] This suggests that before applying the "capable of repetition" doctrine in the future, a court must examine whether the plaintiff could obtain review of the challenged action in a suit for damages.

The Court's most important analysis of *Lyons* did not, however, fall within the heading of mootness. Rather, the Court analyzed plaintiff's article III standing to seek injunctive relief by looking at "whether [Lyons] was likely to suffer future injury from the use of the chokeholds by police officers." 103 S.Ct. at 1667. The fact that he might have been illegally choked by the police once in the past, the Court stated, "does nothing to establish a real and immediate threat that he would again be stopped

---

**5.** The Court also noted that Lyons had not made a reasonable showing that he would again be subjected to the chokehold, thus pre-

cluding reliance on the "capable of repetition" doctrine. *Id.* 103 S.Ct. at 1669.

... by an officer or officers who would illegally choke him into unconsciousness without any provocation or resistance on his part." *Id.* In order to establish standing, Lyons would have had to allege that he would have another encounter with the police and also that all Los Angeles police officers always choke any citizen with whom they have an encounter or that the city had ordered or authorized them to act in such a fashion. *Id.* Lyons had failed to make such an allegation, the Court stated, and thus he had failed to show that he was among those persons who were subject to the allegedly illegal conduct in the future. Absent such a showing, Lyons could not seek prospective relief against application of the chokehold.

## II

### A

Defendants argue that *Lyons* governs this case and that since plaintiff has not alleged and cannot show a reasonable likelihood that he will in the future be arrested, charged, incarcerated, discharged, and held after discharge, like the plaintiff in *Lyons* he does not have standing to maintain this action. This case differs significantly from *Lyons,* however, in that there is no indication in the Supreme Court's opinion or the court of appeals' opinions in *Lyons* that the case had been certified as a class action.

The Supreme Court has consistently distinguished between individual actions and class actions in applying the doctrine of mootness. Mootness, as suggested by our earlier discussion, applies in two different (albeit similar) contexts: " 'when the issues are no longer "live" or the parties lack a legally cognizable interest in the outcome.' " *United States Parole Commission v. Geraghty,* 445 U.S. 388, 396, 100 S.Ct. 1202, 1208, 63 L.Ed.2d 479 (1980) (quoting *Powell v. McCormack,* 395 U.S. 486, 496, 89 S.Ct. 1944, 1951, 23 L.Ed.2d 491 (1969)). *See Murphy v. Hunt,* 455 U.S. 478, 481, 102 S.Ct. 1181, 1182–83, 71 L.Ed.2d 353 (1982) (per curiam); *Lewis v. Tully,* 96 F.R.D. at 373. The Court has recognized that in a case involving a practice to which any par-

ticular person is subjected for only a short period of time, if that person can maintain the action on behalf of others similarly situated the case may remain "live" as to the class and the class thus retains an interest in the outcome, even if the named plaintiff does not. *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), on which we relied in our earlier opinion in this case, is the best example of this. Plaintiffs in *Gerstein* alleged that they had been detained before trial without a judicial finding of probable cause. They filed a class action seeking declaratory and injunctive relief. By the time the class was certified by the district court, none of the named plaintiffs was still in custody awaiting trial. The Court nevertheless held that the class' claim was not moot:

> Pretrial detention is by nature temporary, and it is most unlikely that any given individual could have his constitutional claim decided on appeal before he is either released or convicted. The individual could nonetheless suffer repeated deprivations, and it is certain that other persons similarly situated will be detained under the allegedly unconstitutional procedures. The claim, in short, is one that is distinctly "capable of repetition, yet evading review."
>
> At the time the complaint was filed, the named [plaintiffs] were members of a class of persons detained without a judicial probable cause determination, but the record does not indicate whether any of them were still in custody awaiting trial when the District Court certified the class. Such a showing ordinarily would be required to avoid mootness under *Sosna* [v. *Iowa,* 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975) ]. But this case is a suitable exception to that requirement .... It is by no means certain that any given individual, named as plaintiff, would be in pretrial custody long enough for a district judge to certify the class. Moreover, in this case the constant existence of a class of persons suffering the deprivation is certain.

420 U.S. at 110–11 n. 11, 95 S.Ct. at 861 n. 11 (citations omitted).

Defendants argue that our reliance on *Gerstein* was misplaced because the issue in this case is not one of mootness but rather concerns whether plaintiff can show that there is a real and immediate threat that he will again be subjected to the allegedly unlawful detention of which he complains. In our view, though the issues of "mootness" and "standing" (defendants' view of what *Lyons* concerns) typically arise at different stages of a lawsuit, or in different lawsuits, the essential inquiry is indistinguishable. As we noted earlier, one aspect of mootness is when the parties "lack a legal cognizable interest in the outcome." *Geraghty* refers to this as the "personal stake" requirement. *Geraghty,* 445 U.S. at 396, 100 S.Ct. at 1208. The Court in *Geraghty* cited, among other cases, *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962), as authority for the characterization of the "legally cognizable interest" test as the "personal stake" requirement. *Lyons,* which primarily concerns standing, not mootness, also stated that the basic article III requirement was that the plaintiff must demonstrate a personal stake in the outcome. *Lyons,* 103 S.Ct. at 1665. *Lyons* also cited *Baker v. Carr* for this proposition. In *Lyons,* resolution of the standing question turned on whether the plaintiff had shown a real and immediate threat of future injury as a result of the chokehold. Likewise, in our discussion of standing/mootness in our earlier opinion in this case, we analyzed the applicability of what we termed the "capable of repetition" issue on the basis of whether there was a demonstrable likelihood that the class would be subjected to the practice in the future. *Lewis v. Tully,* 96 F.R.D. at 373–75. Our determination that such a likelihood existed was based on evidence submitted by plaintiff that at least in certain districts of the Circuit Court of Cook County, discharged prisoners were routinely kept locked up and returned to the CCDOC jail at the end of the day. *See id.* at 373, 375. In making this determination, we essentially found that the *Lyons* test, insofar as it requires a showing of a substantial likelihood of future injury as a result of the challenged practice, was satisfied as far as the class was concerned.

However, the *Lyons* test plainly has not been satisfied as to Lewis, the named plaintiff. But as we have noted, *Lyons* was not a class action. Though *Gerstein* and its progeny were written in terms of "mootness," in our view they are based on the notion that the existence of probable future harm to the class can satisfy the personal stake requirement of article III even if the named plaintiff(s) do not meet article III's requirements. What remains to be determined here, therefore, is whether this case satisfies the *Gerstein* rule, and whether *Lyons* has undercut *Gerstein.* We now turn to those issues.

**B**

In *Gerstein v. Pugh,* as we have noted, the Court held that the case was justiciable despite the fact that the named plaintiff's claims had expired before a class was certified. In *Gerstein,* however, the named plaintiff did have a "live" claim for injunctive relief at the time he filed his complaint. The first issue is whether a named plaintiff's failure to have a live claim at the time he or she files a complaint defeats standing even where the class as a whole has a live claim. It is true that in *Geraghty,* the Court stated that that "capable of repetition" doctrine "has been applied *where the named plaintiff does have a personal stake at the outset of the lawsuit,* and where the claim may arise again ...." *Geraghty,* 445 U.S. at 398, 100 S.Ct. at 1209 (emphasis supplied). However, the Court went on to note that "Art[icle] III justiciability is 'not a legal concept with a fixed content or susceptible of scientific verification,'" and is a "'doctrine ... of uncertain and shifting contours.'" *Id.* at 401, 100 S.Ct. at 1211 (quoting *Poe v. Ullman,* 367 U.S. 497, 508, 81 S.Ct. 1752, 1758, 6 L.Ed.2d 989 (1961) (plurality opinion) and *Flast v. Cohen,* 392 U.S. 83, 97, 88 S.Ct. 1942, 1951, 20 L.Ed.2d 947 (1968)). It also stated that determining the contours of article III "with respect to nontraditional forms of

litigation, such as the class action, requires reference to the purposes of the case-or-controversy requirement." *Id.* 445 U.S. at 402, 100 S.Ct. at 1212. We think it implicit in the "capable of repetition, yet evading review" doctrine that the courts are to apply the "personal stake" requirement flexibly, particularly in the context of a class action, where the governmental action challenged is so short in duration that a lawsuit could not proceed to judgment before any given plaintiff's claim would expire.

■ *Geraghty* held that a named plaintiff whose claim had expired could nonetheless challenge the district court's refusal to certify a class. This was based on the view that a dispute between the parties over class certification provided a "concrete, sharply presented issue" that the named plaintiff could litigate although he was unable to establish that he had a live claim on the merits. *Geraghty*, 445 U.S. at 403–04, 100 S.Ct. at 1212–13.[6] The same is true here. While an "interested bystander" would not be able to satisfy *Gerahty's* standard, Lewis "suffered actual, concrete injury as a result of the putatively illegal conduct, and this injury would satisfy the formalistic personal-stake requirement if damages were sought." *Geraghty,* 445 U.S. at 406 n. 11, 102 S.Ct. at 1214 n. 11. The fact that Lewis was actually subjected to the conduct he challenges and deprived of his liberty as a result of the challenged practice ensures an adequately adverse interest to permit him to litigate the class certification issue under *Geraghty.*

■ Once the class was certified, defendants' alleged continuation of the challenged practice ensures that persons who have a "live" claim, for however short a period of time, will exist on the plaintiffs' side of this case. In short, after class certification this case was essentially indistinguishable from *Gerstein.* Under *Gerstein,* based on defendants' alleged continuation of the challenged practice and the certification of a class, the plaintiff class has standing under article III to litigate the constitutionality of defendants' alleged failure to promptly release discharged inmates.[7]

Nothing in *Lyons* suggests that the Court intended to overrule *Gerstein* and *Geraghty.* Indeed, since *Lyons* apparently did not involve a class action, one would be surprised to have the Court discuss the specialized rules applicable to such cases in the course of determining Lyons' standing. Even under the Court's own description of what Lyons would have had to show to establish standing, however, we think the class in this case would have succeeded before the *Lyons* Court. The Court stated, 103 S.Ct. at 1667, that had Lyons alleged that he would have another encounter with a police officer and that all police officers always choke every citizen whom they encounter, either of their own volition or pursuant to a policy of the city, he would have satisfied article III. In this case the class plainly meets the second half of this test, for plaintiff has alleged with supporting evidence that most or all prisoners who are discharged at certain districts are held in custody and then returned to the CCDOC jail at the end of the day.[8]

In order to meet the first half of the *Lyons* test, plaintiff need only allege that

**6.** *Geraghty* left open the issue whether a named plaintiff whose own claim had expired would be a proper class representative. 445 U.S. at 407, 100 S.Ct. at 1214. We will address that issue *infra.*

**7.** In *Gerstein,* the Court based its conclusion that "the constant existence of a class of persons suffering the deprivation is certain" on the assumption that since the class was represented by a public defender, the attorney "has other clients with a continuing live interest in the case." *Gerstein,* 420 U.S. at 111 n. 11, 95 S.Ct. at 861 n. 11. We do not find that aspect of *Gerstein* crucial to the holding. Attorneys representing classes of plaintiffs quite frequently have "clients" of whose existence they are not directly aware. Here, plaintiff's evidence that the challenged practice was admitted to be in effect, *see Lewis v. Tully,* 96 F.R.D. at 373, suffices for present purposes to ensure the constant existence of a class suffering the deprivation.

**8.** We express no view, of course, as to the merits of plaintiff's constitutional claim or the adequacy of his showing of the existence of the challenged practice.

arrested prisoners will in the future be discharged by a judge at the district(s) in question. Plaintiff's allegations in amended count 5 of defendants' policy or practice of failing to release discharged prisoners immediately, fairly read, implicitly contain such a claim. And, unlike in *Lyons,* such an allegation is not "incredible." While in *Lyons* the Court declined to permit plaintiff to rely upon his single unfortunate encounter with the police to show the likelihood of future similar harm, the Court's post-*Lyons* decision in *Kolender v. Lawson,* —— U.S. ——, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983), indicates that past injury may be relevant in determining the likelihood of future harm. *Kolender* involved a challenge by an individual plaintiff to a Texas "stop and identify" statute; the plaintiff sought declaratory and injunctive relief against future operation of the statute, as well as damages for past harm. *Id.* 103 S.Ct. at 1857. The Court noted that Lawson had been stopped pursuant to the statute approximately fifteen times in the two years preceding his lawsuit, and it held that there was therefore a "credible threat" that he might be detained again. *Id.* 103 S.Ct. at 1857 n. 3. While we have not yet been presented with any direct evidence of the number of persons discharged yet not released in the past, the alleged existence of a regular, routine procedure for returning discharged prisoners from some of the outlying district courts to the CCDOC jail indicates that the number is far from insignificant. Indeed, we would find it "incredible"

were defendants to suggest that it is speculative to assert that prisoners will in the future be discharged by judges at the districts in question. The plaintiff class thus satisfies the first prong of Lyons' test and therefore has standing under article III.[9]

### C

One might suggest that *Lyons* stands for the proposition that police or other governmental practices that are random and not systematic are not subject to prospective relief. Though plaintiff in *Lyons* alleged that Los Angeles police officers regularly applied chokeholds in situations in which the officers were not threatened, 103 S.Ct. at 1663, the Court's discussion of the two part test for standing suggests that as far as the Court was concerned, since there was no allegation that police officers *always* choked *everyone* with whom they had encounters, any claim of future injury was speculative. The Court stated that if officers acted "within the strictures of the City's policy," in order to suffer injury in the future Lyons would have to "illegally resist arrest or an officer would have to disobey city policy and choke him without provocation." *Id.* 103 S.Ct. at 1667.[10] In the present case, by contrast, the complaint alleged that at least in some districts defendants routinely failed to release discharged prisoners immediately.

Defendants now challenge the sufficiency of plaintiff's showing of a systematic policy. However, the present motion was entitled a motion to dismiss (apparently under Fed.R.

**9.** The *Lyons* majority relied heavily on *O'Shea v. Littleton,* 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974) and *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). In our earlier opinion in this case, we distinguished *O'Shea* because, unlike in that case, the prospect of future injury here was not "conjectural." *Lewis v. Tully,* 96 F.R.D. at 374–75. The same distinction exists between this case and *Rizzo.* In neither of those cases was a systematic, practically formal policy alleged or shown to exist; the plaintiffs based their allegations of future injury purely on a showing of past harm. This case is plainly different from *O'Shea* and *Rizzo.*

We also note that, unlike in *Lyons,* here no given member of the plaintiff class is in a position to choose whether he or she will have

an "encounter" with the Cook County judicial system such as that which Lewis had.

**10.** Apparently the evidence adduced on the motion for preliminary injunction in *Lyons* indicated that the alleged policy was not as broad as plaintiff had averred. The Court noted that the above-quoted allegation was not equivalent to an assertion that the city authorized use of the chokehold absent provocation, and that even if that was the import of the allegation it was belied by the evidence on the motion for preliminary injunction. In any event, the Court stated, plaintiff did not have standing to challenge application of the chokehold in situations he had not experienced. *Lyons,* 103 S.Ct. at 1667 n. 7.

Civ.P. 12(b)(1)), and no evidentiary material was included. Plaintiff's response referred briefly to evidence submitted on the motion for class certification that we had discussed in our November opinion. In their reply, defendants included a summary of evidence supporting their view that discharged prisoners are handled on a case-by-case basis and that only dischargees with additional "holds"—e.g., outstanding charges or warrants—are not immediately released. Plaintiff has not yet had an opportunity to rebut defendant's evidence fully. For the purposes of the present motion we think that plaintiff has made a prima facie showing of jurisdiction. The evidence defendants have submitted, however, is also relevant to the merits of the class claim for injunctive relief, and we suggest that defendants include their evidence in a motion for summary judgment.

### D

The Court in *Lyons* also stated that the plaintiff there was "no more entitled to an injunction than any other citizen of Los Angeles; and a federal court may not entertain a claim by any or all citizens who no more than assert that certain practices of law enforcement officers are unconstitutional." *Lyons,* 103 S.Ct. at 1670. Since as we noted in our earlier opinion, *see* 96 F.R.D. at 377, any resident of Cook County is potentially a member of the class, defendants argue that the quoted statement from *Lyons* bars a claim for injunctive relief here, even if brought on behalf of a class.

The cases of *Schlesinger v. Reservists to Stop the War,* 418 U.S. 208, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974) and *United States v. Richardson,* 418 U.S. 166, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974), on which the *Lyons* Court relied for the above-quoted statement, were cases in which no named plaintiff or any other citizen could show any-

thing other than "abstract" injury. *Reservists,* 418 U.S. at 219, 94 S.Ct. at 2931; *Richardson,* 418 U.S. at 177, 94 S.Ct. at 2946.[11] Furthermore, since no individual citizen could show that his injury was any different from that suffered by any other citizen, the plaintiffs' claims in those cases were, as the Court in *Lyons* termed it, "undifferentiated" from those of the citizenry as a whole. *Lyons* appears to suggest that in such cases, any claim for relief must be addressed to the legislature. *Lyons,* 103 S.Ct. at 1670.

In the present case, by contrast, the injuries suffered by those who are arrested and discharged but not released are clearly concrete and are different from the abstract grievance that a bystander might have concerning the alleged constitutional violation. The fact that anyone in Cook County may at some time in the future "enter" the class of those actually experiencing harm does not make this case like *Reservists* and *Richardson;* moreover, the fact that no individual member of the class can show a significant likelihood of future harm does not, in light of *Gerstein,* foreclose standing under article III. In this case as in *Gerstein,* at any given point in time there are some individuals who are currently subject to the alleged unlawful practice and others (whose identities we do not yet know) who will be subject to it. The injury suffered or risked by those people is sufficiently differentiated from that suffered by the rest of society that *Reservists* and *Richardson* do not bar standing here.

### E

Finally, defendants object that because the likelihood that Lewis will again be subjected to the challenged practice is infinitesimal, he is not a member of the class he seeks to represent. This objection impli-

---

11. *Reservists* involved a challenge to the membership of various members of Congress in the armed forces reserve, which was alleged to violate article I, § 6, cl. 2 of the Constitution. *Richardson* involved a challenge to the secrecy of government appropriations for the Central Intelligence Agency as violative of article I, § 9,

cl. 7 of the Constitution. *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), also cited by the Court in *Lyons,* merely repeats the general proposition of law established by *Reservists* and *Richardson. Id.* at 499, 95 S.Ct. at 2205.

cates both article III concerns, *see, e.g., Harris v. McRae,* 448 U.S. 297, 320 n. 23, 100 S.Ct. 2671, 2690 n. 23, 65 L.Ed.2d 784 (1980); *Warth v. Seldin,* 422 U.S. 490, 502, 95 S.Ct. 2197, 2207, 45 L.Ed.2d 343 (1975); *O'Shea,* 414 U.S. at 494–95, 94 S.Ct. at 675–76; *Bailey v. Patterson,* 369 U.S. 31, 32–33, 82 S.Ct. 549, 550–51, 7 L.Ed.2d 512 (1962) (per curiam), and the issue of Lewis' representative status under Fed.R.Civ.P. 23(a)(4).

Defendants do not argue that a case or controversy does not exist simply because Lewis was not a member of the class at the time of class certification. That was true in *Gerstein* as well. It did not bar article III standing in *Gerstein* and does not bar it here either.

■ Defendants' objection appears to be that Lewis *never* had a claim for injunctive relief after his release and thus was not a member of the class even when the amended count 5 was filed. However, under the "relation back" doctrine first mentioned by the Court in *Sosna v. Iowa,* 419 U.S. 393, 402 n. 11, 95 S.Ct. 553, 559 n. 11, 42 L.Ed.2d 532 (1975), and later applied in *Gerstein* and *Swisher v. Brady,* 438 U.S. 204, 213 n. 11, 98 S.Ct. 2699, 2705 n. 11, 57 L.Ed.2d 705 (1978), among other cases, given the transitory nature of any particular plaintiff's claim for injunctive relief, the certification of the class here relates back to the filing of

amended count 5.[12] Though it might be considered pure legal formalism, this in effect means that a class of persons currently subject to the illegal conduct "existed" at the time amended count 5 was filed. As the Supreme Court stated in *Franks v. Bowman Transportation Co.,* 424 U.S. 747, 754, 96 S.Ct. 1251, 1259, 47 L.Ed.2d 444 (1976), "[i]nsofar as the concept[s] of [standing and] mootness define[] constitutionally minimum conditions for the invocation of federal judicial power, [their] meaning and scope, as with all concepts of justiciability, must be derived from the fundamental policies informing the 'cases or controversies' limitation imposed by Art. III."[13] The Court's concern in *Harris, Warth,* and *Bailey* appears to have been with putative class representatives who had never been subjected to the conduct or statute of which they complained. Here, of course, the case is different. Though Lewis cannot show a significant risk of future harm, his past encounter with the challenged practice sufficed, as we have noted, to give him a sufficient personal stake to have litigated class certification. Since the class was certified there has at all times been a group of persons on the plaintiff's side of this case who are currently subject to the allegedly illegal conduct.[14] Here, therefore, the concern noted in *Harris, Warth,* and *Bailey* is satisfied.[15]

**12.** The class action issue was first brought into the case by the filing of the amended count 5.

**13.** The quote in *Franks* concerned only mootness. However, though we previously have conceded that the specific question here is one of standing and not mootness (since any claim Lewis ever had for injunctive relief did not "die" during this lawsuit but rather before it was filed), the inquiry under each heading is the same: whether the plaintiff, or the plaintiff class, has a sufficiently adverse interest vis-a-vis the defendants to make the case susceptible of judicial resolution.

**14.** Anyone discharged but not released would have a "live" claim for injunctive relief during the time after discharge that he was still in custody. In plaintiff's case this is alleged to have been approximately 12 hours. Defendant might object that such injury is not "irreparable" and thus not a proper subject of injunctive relief, but in general, where denial of constitutional rights is involved, injury is presumed

irreparable. *See Schnell v. City of Chicago,* 407 F.2d 1084, 1086 (7th Cir.1969); *United States v. State of Michigan,* 508 F.Supp. 480, 491–92 (W.D.Mich.1980); *International Ass'n of Firefighters, Local 2069 v. City of Sylacauga,* 436 F.Supp. 482, 492 (N.D.Ala.1977); *Illinois Migrant Council v. Pilliod,* 398 F.Supp. 882, 904 (N.D.Ill.1975) (Marshall, J.), *aff'd,* 540 F.2d 1062 (7th Cir.1976). *See generally* 11 C. Wright and A. Miller, Federal Practice and Procedure § 2948 at 440 (1973) (citing cases).

**15.** In *O'Shea,* matters were slightly different from *Harris, Warth,* and *Bailey.* There was no specific allegation of past injury by any plaintiff at the hands of the defendants who were petitioners in the Supreme Court. *O'Shea,* 414 U.S. at 495, 94 S.Ct. at 676. At oral argument, plaintiffs' counsel suggested that some plaintiffs had suffered injury as a result of the defendants-petitioners' actions. *Id.* The Court stated, however, that this past exposure was insufficient to show a present case or contro-

## F

Our reference to a "class" of persons subject to defendants' conduct is, it might be argued, essentially circular. One might argue that to state that standing to ·challenge a practice prospectively is established by the existence of a class of persons who are or will be subject to it is to put the cart before the horse, and that article III requires us to *determine* that such a class exists and has standing and not simply to assume it. If one can always define and certify a class in terms of those subject to the illegal conduct, the argument goes, then the *Lyons* requirements, as applied to class actions, are easily circumvented. However, Fed.R.Civ.P. 23(a)(1) and (b)(2), which we previously held were satisfied here, require that defendants have acted on grounds generally applicable to the putative class and that the class be sufficiently numerous that joinder of all members is impracticable. Our finding that these rules were prima facie satisfied is tantamount to a finding that a class exists here.

■ As we have suggested, new persons with "live" claims for injunctive relief (*see* n. 14 *supra*) are constantly entering the category of those currently subject to defendants' alleged practice. That membership in the class is constantly shifting does not make the case inappropriate for class action status. The allegedly static nature of defendants' practice anchors the facts on

solid ground and makes the case appropriate for judicial resolution.

We recognize that defendants now argue that the existence of a class or the likelihood of future injury is speculative in light of evidence suggesting that defendants act in a case-by-case manner with respect to dischargees. For present purposes, however, plaintiff's prima facie showing suffices to establish standing.[16]

## III

As far as representation of the class is concerned, since Lewis is not currently subject to the challenged practice, one might reasonably question whether he is a proper representative for a class seeking injunctive relief.[17] Any claim for injunctive relief that Lewis had in the past is no longer "live," and Lewis cannot demonstrate a sufficient likelihood of future injury to him to establish standing to seek injunctive relief personally.

The adequacy of a proposed representative, as we noted in our earlier opinion, turns on the proposed representative's interest in the outcome and the capability of his counsel. We think that plaintiff's past injury as a result of the alleged practice suffices to establish that he is a proper representative. Plaintiff will be required to demonstrate the illegality of the practice in order to hold the individual county defendants liable, and in order to hold the Cook County Sheriff and the Executive Di-

versy regarding injunctive relief absent a continuing adverse effect. *Id.* at 495–96, 94 S.Ct. at 676. The Court stated· that to show a case or controversy plaintiff would have to show a real and immediate threat that they would violate the law and be tried before the petitioners (a judge and magistrate). This took the case into the realm of speculation, the Court stated, because it was proper to assume that plaintiffs would act within the law. In the present case, future injury is not similarly speculative, and a *person need not commit a volitional act to come within the class* (Lewis did not, if his complaint is taken as true). As far as any class-action problem posed by *O'Shea* is concerned, we note only that *O'Shea* preceded *Gerstein* and *Geraghty,* on which we have relied here.

**16.** We do not necessarily accept the argument, which defendants have not made, that *Lyons*

bars a claim for injunctive relief on behalf of a class where the challenged practice is not uniformly or systematically applied. The parties may brief this question in the future in the context of a motion for summary judgment, if they so desire.

**17.** Plaintiff recently filed a motion to amend count 5 so as to seek damages for the class, presumably in order to avoid standing problems. We have deferred consideration of that motion pending ruling on the present motion. We do not herein express any view as to the propriety of damage relief for those injured in the past by defendants' alleged practice or as to whether such a class action could be maintained under Fed.R.Civ.P. 23(b)(2) or any other heading of rule 23(b).

rector of the Cook County Department of Corrections liable he will in all likelihood have to show that his injury came as a result of a policy established by or with the assent of these supervisory-level personnel. In a case such as this one, the flexibility existing in the requirements of article III is appropriately found in the requirements of rule 23 as well. *Gerstein* and *Sosna* would be meaningless if the "mooted" named plaintiff could no longer continue as class representative, for the same factors that mooted his or her claim would inexorably moot any replacement's claim.[18] Given the transitory nature of the harm suffered by those subjected to defendants' practice the absence of a representative with a "live" claim for injunctive relief does not require us to overturn our earlier certification of the class.

Once the class was certified, Lewis' attorney no longer represented just Lewis but rather became duty bound to represent the interests of the class as a whole. As we have noted, it is frequently the case in class actions that the attorney for the class has "clients" whom he does not know. Lewis' attorney, by seeking to represent the class, has "under[taken] a fiduciary duty to the class," *see Soskel v. Texaco, Inc.*, 94 F.R.D. 201, 203 (S.D.N.Y.1982). As in *Franks v. Bowman Transportation Co.*, 424 U.S. 747, 754, 96 S.Ct. 1251, 1259, 47 L.Ed.2d 444 (1976), "[n]o questions are raised concerning the tenacity and competence of [class members'] counsel in pursuing [the claim for injunctive] relief...."

### IV

To summarize, this case is governed by the Supreme Court's flexible application of the standing doctrine in class action litiga-tion, and not by *Lyons.* Here, the likelihood of future harm to the class as a result of defendants' alleged practice is anything but abstract or speculative; rather, it is concrete and certain. Because any particular person's claim for injunctive relief expires within a very short time after it arises, Lewis' nonmembership in the class at the time amended count 5 was filed and thereafter defeats neither the standing of the plaintiff class nor Lewis' representative status. Defendants' motion to dismiss the injunctive relief claim in amended count 5 is denied.

of class certification. *Geraghty*, 445 U.S. at 407 n. 12, 100 S.Ct. at 1214 n. 12.

We note, however, that matters would be different had Lewis never been subjected to the challenged practice. Were that the case, he would simply be an "interested bystander" lacking standing under article III. His past injury due to defendants' conduct makes his stake in this litigation sufficiently concrete to make him a proper representative.

**18.** *See Sosna*, 393 U.S. at 403, 95 S.Ct. at 559 (holding that plaintiff whose claim was moot was proper representative under rule 23(a)). *See generally* Comment, A Search for Principles of Mootness in the Federal Courts: Part Two—Class Actions, 54 Tex.L.Rev. 1289, 1331–32 (1976); Comment, Continuation and Representation of Class Actions Following Dismissal of Class Representative, 1974 Duke L.J. 573, 602–08, both of which the Court in *Geraghty* cited in remanding the case for redetermination