**Sandy LEWIS on behalf of himself and all others similarly situated, Plaintiff,**

v.

**Martin TULLY, Star 7817, Chicago Police Officer, Fred Eckles, Jr., Star 13561, Chicago Police Officer, Patrick J. Lynch, Star 41, Chicago Police Officer and Watch Commander, Sgt. Edward Lanuti, Star 06564, Chicago Police Officer, City of Chicago, a Municipal Corporation, Richard J. Elrod, Sheriff of Cook County, Illinois, Philip Hardiman, Executive Director of Cook County Department of Corrections, Frank Jones, Badge 303, Assistant Supervisor, Cook County Sheriff's Police, and Jesse James III, Badge 1128 Cook County Sheriff's Police Officer, Defendants.**

No. 81 C 3833.

United States District Court,
N.D. Illinois, E.D.

Nov. 10, 1982.

Harvey Melinger, Chicago, Ill., for plaintiff.

Stanley Garber, Corp. Counsel and Jennifer Duncan-Brice, Asst. Corp. Counsel, Chicago, Ill., for city defendants.

Richard M. Daley, State's Atty. of Cook County and Mark R. Davis, Asst. State's Atty., Chicago, Ill., for county defendants.

## MEMORANDUM OPINION

PRENTICE H. MARSHALL, District Judge.

This case began as a damage suit against the City of Chicago, several Chicago police officers, the Cook County Sheriff, and certain county officials and Sheriff's police officers for the alleged deprivation of Sandy Lewis' constitutional rights in connection with his arrest and detention for disorderly conduct on March 28, 1981. Lewis alleges that he was arrested without probable cause by the Chicago Police Department and was then held in custody on suspicion of being one "Murray Brown, alias Michael Lewis," a person wanted on an outstanding warrant for possession of controlled substances. He claims that although the police department determined through fingerprints that he was not Mr. Brown, he was nevertheless transported to the Cook County Department of Corrections (CCDOC) jail under the name of Murray Brown to be charged with the crimes pending against Brown. On March 29, 1981, he appeared in Holiday Court at 26th Street and California Avenue under the name of Murray Brown, and bond was set at $30,-000. He was held in custody at 26th and California until the following morning, when he was transported by the Sheriff's Police to the 6th District of the Circuit Court of Cook County, in Markham, Illinois.

At 10:30 a.m. on March 30, a circuit court judge found that plaintiff was not Murray Brown, quashed the outstanding warrant, and discharged plaintiff. Despite this, plaintiff was kept in custody at Markham until 6:15 p.m. that evening. At 6:15, certain CCDOC officers transported him back to the CCDOC jail, where he was released after processing at 10:00 p.m. the same night. *See generally* Response to Plaintiff's Interrogatories to Richard J. Elrod, Interrogatory 1; Plaintiff's Amended Complaint.

In count V of his complaint, as amended, plaintiff alleges that the Sheriff of Cook County and the Executive Director of the CCDOC (a subordinate of the Sheriff) have established a policy or practice whereby prisoners who are discharged by a judge sitting at an "outlying" Cook County court—any court other than the First District at 26th and California—are sent back to CCDOC rather than being released at the place of their discharge. Plaintiff alleges that this violates the probable cause requirement of the fourth amendment, as applied to the states through the due process clause of the fourteenth amendment. *See* Reply Memorandum in Support of Motion for Class Determination ("Pl. Reply") at 5; Amended Count V at ¶ 31.

Plaintiff's amended count V contains a request for injunctive and declaratory relief in addition to his damage claim. He has now moved the court to certify a class under Fed.R.Civ.P. 23(b)(2) as to his claim for equitable relief. As amended by plaintiff on June 28, 1982, the proposed class is defined as including

> All persons who are now or may in the future be held in custody in the Cook County Department of Corrections jail and who are discharged by any judge sitting at any location in Cook County, Illinois subsequent to the order allowing

this case to be maintained as a class action.

Because count V does not address the issue of release of CCDOC prisoners discharged by judges at the First District courts, we read plaintiff's proposed class as including only prisoners sent to and discharged at outlying districts.

■ In determining a motion for class certification, a court is to consider the allegations in the complaint and any evidentiary facts before it. *Goodman v. Schlesinger,* 584 F.2d 1325, 1331–32 (4th Cir.1978); *Western Electric Co. v. Stern,* 544 F.2d 1196, 1199–1200 (3d Cir.1976); *Petty v. Peoples Gas Light and Coke Co.,* 86 F.R.D. 336, 339 (N.D.Ill.1979). The parties have referred in their memoranda to the depositions of defendants Philip Hardiman, Executive Director of the CCDOC ("Hardiman Dep.") and Frank Jones, assistant supervisor of the Cook County Sheriff's Police stationed at the 6th District of the Circuit Court of Cook County, in Markham, Illinois ("Jones Dep."), and to defendants' responses to plaintiff's interrogatories. In deciding the instant motion, we place primary reliance on those materials.[1]

A

As an initial matter, defendants claim that the plaintiff as well as the proposed class lack the "personal stake" in the outcome of the litigation required under article III of the Constitution to give them standing to pursue the class claim. It is alleged that any claim for injunctive or declaratory relief is moot as to plaintiff and that as to the putative class, which appears to be coextensive with the general public of Cook County, there is no sufficient immediacy and reality to the allegations of future potential injury to warrant invocation of jurisdiction under article III. *See generally*

---

1. The parties did not submit any of this matter along with their memoranda relating to the motion for class certification. While Local Rule 12(C) does not explicitly require them to do so, we believe that that should be the preferred practice. For example, copies of deposition excerpts relied upon by a party ordinarily should be attached to the party's motion or memorandum. Such a practice will ensure full consideration of a party's arguments as well as saving the court's time.

*O'Shea v. Littleton,* 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974).[2]

■ "[M]ootness has two aspects: 'when the issues are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *United States Parole Commission v. Geraghty,* 445 U.S. 388, 396, 100 S.Ct. 1202, 1208, 63 L.Ed.2d 479 (1980) (quoting *Powell v. McCormack,* 395 U.S. 486, 496, 89 S.Ct. 1944, 1950, 23 L.Ed.2d 491 (1969)). *See also Murphy v. Hunt,* 455 U.S. 478, 102 S.Ct. 1181, 1182–83, 71 L.Ed.2d 353 (1982) (per curiam). The controversy over the constitutionality of defendants' post-discharge detention practices remains live as to the class which plaintiff purports to represent and, we believe, as to plaintiff himself. While defendants dispute the scope of the alleged practice of holding discharged prisoners for return to the CCDOC jail to be released, defendants Elrod and Hardiman have stated that at least in some instances, the policy or practice to which plaintiff was subjected is applied to others. *See* Elrod's Response to Plaintiff's Interrogatory 5; Hardiman Dep. at 64–66. Plaintiff, therefore, has a colorable claim that an allegedly unlawful practice exists which will continue to be applied in the future to a class of persons. As in *Gerstein v. Pugh,* 420 U.S. 103, 110–11 n. 11, 95 S.Ct. 854, 861 n. 11, 43 L.Ed.2d 54 (1975), "the constant existence of a class of persons suffering the deprivation is certain."

■ The second prong of the mootness analysis—whether the plaintiff has a legally cognizable interest in the outcome of the action—is often expressed in terms of a requirement that the plaintiff have a "personal stake" in the outcome. *See Geraghty,* 445 U.S. at 396, 100 S.Ct. at 1208; *Franks v. Bowman Transportation Co.,* 424 U.S. 747, 755, 96 S.Ct. 1251, 1259, 47 L.Ed.2d 444 (1976); *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). The purpose of this requirement is to assure

that the case is "in a form capable of judicial resolution." The personal stake requirement necessitates a concrete factual record and adversarial presentation. *Geraghty,* 445 U.S. at 403, 100 S.Ct. at 1212; *see also Simpson v. Miller,* 93 F.R.D. 540, 544 (1982).

■ The showing necessary to establish the requisite "personal stake" differs as between class actions (including putative class actions such as the present) and individual suits. *See, e.g.,* *Murphy v. Hunt,* 455 U.S. 478, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982). When the claim on the merits is "capable of repetition, yet evading review," the named plaintiff may litigate the class certification issue despite his or her loss of a personal stake in the outcome of the case. *See Geraghty,* 445 U.S. at 398, 100 S.Ct. at 1209; *Gerstein,* 420 U.S. at 110–11 n. 11, 95 S.Ct. at 861 n. 11. While the "capable of repetition" doctrine was developed outside the class action context, *see Geraghty,* 445 U.S. at 398, 100 S.Ct. at 1209, where class certification is not requested the plaintiff must show that there is a "reasonable expectation that [he] would be subjected to the same action again." *Murphy,* 102 S.Ct. at 1183 (quoting *Weinstein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 348, 46 L.Ed.2d 350 (1975) (per curiam)). In contrast, *Gerstein v. Pugh* illustrates the application of the doctrine to a class action. In *Gerstein,* plaintiffs claimed that they had been detained before trial after the filing of informations against them, without a judicial finding of probable cause. They filed a class action in federal court requesting declaratory and injunctive relief. Because of the inherently temporary nature of pretrial detention, none of the named plaintiffs was still in custody awaiting trial at the time the class was certified by the district court. Nevertheless, the Supreme Court held that the claim

---

**2.** We do not believe that mootness serves as a bar to class certification under Fed.R.Civ.P. 23. Such a claim is more properly considered under Fed.R.Civ.P. 12(b)(1). However, because the parties have briefed the issue and because defendants' position—that we should not enter-

tain moot claims—remains the same whether styled as a motion to dismiss or as a reason for denial of certification, we will consider the mootness claim. *See Simpson v. Miller,* 93 F.R.D. 540, 543 n. 5 (N.D.Ill.1982).

for injunctive and declaratory relief was not moot:

> This case belongs ... to that narrow class of cases in which the termination of a class representative's claim does not moot the claims of the unnamed members of the class. See Sosna v. Iowa, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975). Pretrial detention is by nature temporary, and it is most unlikely that any given individual could have his constitutional claim decided on appeal before he is either released or convicted. The individual could nonetheless suffer repeated deprivations, and it is certain that other persons similarly situated will be detained under the allegedly unconstitutional procedures. The claim, in short, is one that is distinctly "capable of repetition, yet evading review."

> At the time the complaint was filed, the named [plaintiffs] were members of a class of persons detained without a judicial probable cause determination, but the record does not indicate whether any of them were still in custody awaiting trial when the District Court certified the class. Such a showing ordinarily would be required to avoid mootness under Sosna. But this case is a suitable exception to that requirement [citations omitted].... It is by no means certain that any given individual, named as plaintiff, would be in pretrial custody long enough for a district judge to certify the class. Moreover, in this case the constant existence of a class of persons suffering the deprivation is certain.

Id. 420 U.S. at 110–11 n. 11, 95 S.Ct. at 861 n. 11. See also Geraghty, 445 U.S. at 397–99, 100 S.Ct. at 1209–10; DeBrown v. Trainor, 598 F.2d 1069, 1070–71 (7th Cir.1979).

As we have stated, the evidence now before us indicates that other persons situated similarly to plaintiff will suffer injuries similar to his. In addition, because the post-discharge detention alleged by plaintiff lasts only a matter of hours, it is literally impossible that a given detainee would remain in custody long enough to file a complaint, let alone succeed in presenting a motion for class certification. This case, we believe, presents a claim to the "capable of repetition" exception even more compelling than that in Gerstein.[3]

Geraghty suggests that where the "capable of repetition" test is satisfied, the existence of a personal stake in the outcome on the part of plaintiff is unnecessary. Geraghty, 445 U.S. at 398, 100 S.Ct. at 1209. In any case, however, the issues in this lawsuit are presented in a sufficiently concrete, adversarial context to satisfy the personal stake requirement. The fact that plaintiff is not currently subject to post-discharge detention does not detract from the adversarial posture of the case; the parties have vigorously contested plaintiff's claim for damages. Nor does plaintiff's current status alter the concrete factual setting that the case presents. See Sibron v. New York, 392 U.S. 40, 57, 88 S.Ct. 1889, 1899, 20 L.Ed.2d 917 (1968). In O'Shea v. Littleton, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974), cited by defendants, the absence of a concrete factual setting was crucial to the Court's holding that the case was not justiciable. Plaintiffs in O'Shea, 17 black and 2 white residents of Cairo, Illinois, alleged that local prosecutors, police, magistrates, and judges were engaged in intentional and systematic discrimination against black residents of Cairo in the performance of their official duties. Id. at 491–92, 94 S.Ct. at 673–74. None of the named plaintiffs, however, alleged that he or she had suffered

---

**3.** Murphy v. Hunt, 455 U.S. 478, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982) (per curiam) does not affect the Gerstein analysis. In Murphy, plaintiff challenged his pretrial detention without bail pursuant to a provision of the Nebraska constitution. The Court held that because plaintiff was subsequently convicted, his claim to pretrial bail was no longer "live." Id. 102 S.Ct. at 1183. However, the Court noted that plaintiff had not sought to represent a class of similarly situated individuals, suggesting that had he done so, the outcome would be different. Id.

any injury as a result of these practices, *id.* at 495, 94 S.Ct. at 675, and the Court stated that any future wrongdoing as to the named plaintiffs was speculative at best. *Id.* at 497–98, 94 S.Ct. at 676–77.[4] In the present case, by contrast, plaintiff suffered a concrete injury as a result of defendants' alleged practices. In addition, as noted earlier, defendants appear to have admitted that at least in some instances others situated similarly to plaintiff are treated as he was. Although the existence of a "policy or practice" remains, of course, an issue for trial, for the purpose of the present inquiry we believe that we can take defendants' statements at their face value. Thus, unlike in *O'Shea* it is not "speculative" that similar injuries could occur to plaintiff or others in the future.

While this case arguably presents us with problems in determining whether plaintiff is an adequate class representative under Fed.R.Civ.P. 23(a), that does not defeat his or the class' standing under article III. Therefore, we hold that the claim for injunctive relief under count V of the complaint presents a "case or controversy."

### B

There are four prerequisites to certification of a class action: 1) the class must be so numerous that joinder of all members is impracticable; 2) there must be questions of law or fact common to the class; 3) the claims of the representative parties must be typical of those of the class; and 4) the representative parties must be able to fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a).

■ The proposed class satisfies the numerosity/impracticability requirement. The evidence now before us indicates that what happened to plaintiff happens to a fairly substantial number of discharges. Defendant Hardiman, Executive Director

of the CCDOC, testified at his deposition that on a given day, from nine to thirteen buses with thirty-two to fifty-six passengers each go from the CCDOC jail at 26th and California to outlying Cook County circuit courts. Hardiman Dep. at 58. Most of these prisoners remain in custody after their cases are heard at the outlying court. *Id.* at 76. Of those discharged by a judge, Hardiman stated that two procedures exist. In some cases, the judge specifically orders the defendant released from the courtroom. *Id.* at 64. Hardiman stated, however, that this is unusual. *Id.* In most cases, he said, the dischargee is brought back to the CCDOC jail for release. *Id.* The reason for this is to ensure that the dischargee is properly identified before release. *Id.* at 63, 66. In addition, in some cases the dischargee is wanted on other warrants or for other charges. *Id.* at 84. The CCDOC is equipped to handle the pre-release identification procedure only at 26th and California, Hardiman stated. *Id.* at 117. Although he suggested that a Sheriff's deputy in a given outlying court has the ability to release a dischargee without sending him or her back to the CCDOC jail even where the judge has not ordered immediate release, *id.* at 179, he indicated that this was not too frequent a practice. *Id.* at 191.

Hardiman was unable to estimate how many dischargees are returned to the CCDOC jail for processing and release. *Id.* at 74–75. However, it can be inferred from his testimony that at least a fairly substantial number of dischargees are returned to 26th and California, given that release from the courtroom is, according to Hardiman, the exception rather than the rule. *Id.* at 64.

A somewhat different picture emerges from defendant Elrod's responses to plaintiff's interrogatories and from the deposi-

---

**4.** In addition, it is clear from the Court's opinion that its decision was influenced by its "reluctance to interfere with the normal operation of state administration of its criminal laws in the manner sought" by plaintiffs in light of the "uncertainty about whether the alleged injury [would] be likely to occur again in the future."

*Id.* 414 U.S. at 498–99, 94 S.Ct. at 677; *see also id.* at 499–504, 94 S.Ct. at 677–80. Moreover, it is worth noting that *O'Shea* preceded the Court's more expansive decisions regarding mootness in class actions such as *Sosna v. Iowa, Gerstein,* and *Geraghty.*

tion of defendant Frank Jones, an assistant supervisor with the Sheriff's Court Services division. Both suggest that release at the district courthouse is the norm. Elrod stated that the decision is made at the district level by Court Services personnel whether to release a dischargee from the district or return him to the CCDOC. He stated that the "ordinary operating procedure" at Districts 2, 3, and 5 (Evanston, Niles and Oak Lawn) is to release a dischargee from the district courthouse after running a telephone check with the CCDOC records division to determine whether other reasons exist to keep him in custody. *See* Elrod's Response to Interrogatories 5F, 5G.[5] Elrod stated, however, that this procedure is rarely followed at the Sixth District in Markham, where plaintiff was discharged. From Markham, he said, discharged prisoners are normally returned to the CCDOC for release. *Id.*

Mr. Jones, who is stationed at the Markham courthouse, contradicted Hardiman's and Elrod's characterizations of the procedure followed at Markham. He stated that when a prisoner is discharged by a judge, Court Services personnel run a telephone check with the CCDOC records division. If this check does not turn up additional reasons to keep the prisoner in custody, he or she is released at Markham. Jones Dep. at 34–38.

While Jones' testimony is in conflict with that of Hardiman and Elrod as to the existence of a policy or practice, we believe that the proposed class meets the "impracticability" requirement of rule 23(a). Hardiman's and Elrod's statements tend to show that, for the purposes of the present motion, a sufficient number of potential class members exists to satisfy rule 23(a). In addition, defendants themselves admit that no method exists by which individual class members can be identified. *See, e.g.,* Elrod's Response to Plaintiff's Supplemental Interrogatory 12. As noted by the court in *Phillips v. Joint Legislative Committee,* 637 F.2d 1014, 1022 (5th Cir.1981), *cert. denied,* 456 U.S. 960, 102 S.Ct. 2035, 72 L.Ed.2d 483 (1982), where the number of class members cannot be determined and the class includes persons who may be injured in the future, joinder is "certainly impracticable."

[redacted] Defendants also suggest that the class definition is too vague, that no ascertainable class exists, and that because the number of class members cannot be determined, certification should be denied. While it is true, as defendants state, that a readily ascertainable class must exist before it can be certified, *See Simer v. Rios,* 661 F.2d 655, 660 (7th Cir.1981), *cert. denied,* 456 U.S. 917, 102 S.Ct. 1773, 72 L.Ed.2d 177 (1982), a class that is defined by the contested practices of the defendant is sufficiently ascertainable. *E.g., Alliance to End Repression v. Rochford,* 565 F.2d 975, 977–78 (7th Cir.1977). However, as defined by plaintiff the class is not so limited; it includes *all* persons discharged at outlying districts rather than those who are discharged but are returned to the CCDOC jail for release. It is clear that the court has the discretion to redefine the class in an appropriate manner. *See Washington v. Walker,* 75 F.R.D. 650, 652 (S.D.Ill.1977); 7 C. Wright and A. Miller, Federal Practice and Procedure § 1760 at 582–83 (1972 and Supp.1982). We believe that redefinition to conform the proposed class to those who may be injured by defendants' alleged practices is appropriate, particularly because plaintiff's amended count V is aimed only at the practice of transporting discharged prisoners back to the CCDOC jail for release and of not releasing them promptly after discharge. *See* Plaintiff's Amended Count V, ¶¶ 29, 31. Thus, on our own motion we will redefine the proposed class as follows:

> All persons who are now or may in the future be held in custody in the Cook County Department of Corrections jail and who are discharged by any judge

5. However, he did not state what procedure is to be used when the "ordinary" procedure is not followed. In addition, in response to plaintiff's supplemental interrogatory 12, Elrod stated that where doubt is raised concerning the existence of additional "legal holds," the dischargee generally is returned to the CCDOC for further checking before release.

sitting at any location in Cook County other than the First District of the Circuit Court of Cook County but are returned to the Cook County Department of Corrections jail for release.[6]

As redefined, the class includes all who may in the future be subjected to the challenged practices of defendants. The fact that this definition may effectively include all residents of Cook County does not make the class so broad or indefinite as to preclude certification. *See Alliance to End Repression,* 565 F.2d at 977–78. In addition, the fact that the number of class members cannot be determined with precision does not defeat certification. *See Vergara v. Hampton,* 581 F.2d 1281, 1284 (7th Cir.1978), *cert. denied,* 441 U.S. 905, 99 S.Ct. 1993, 60 L.Ed.2d 373 (1979).

Count V also involves questions of fact and law common to the class. First, the question whether defendants have adopted a policy, custom, or practice of returning dischargees to the CCDOC jail for release rather than releasing them promptly after discharge is a question common to the class. Second, if such a policy or practice is shown to exist, its constitutionality will be a common question. *See, e.g., Alliance to End Repression v. Rochford,* 565 F.2d 975, 978–79 (7th Cir.1977); *Midwest Community Council v. Chicago Park District,* 87 F.R.D. 457, 460 (N.D.Ill.1980). The fact that the evidence now before us is in conflict as to the existence of a policy or practice does not affect our decision that common questions exist; if this conflict demonstrates anything, it is the impropriety of deciding the merits of plaintiff's case at the class certification stage. *See, e.g., Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1974); *Alliance to End Repression,* 565 F.2d at 979 n. 8; *see generally* 7 C. Wright & A. Miller, Federal Practice & Procedure § 1759 at 577–78 (1972 and Supp.1982) (citing cases). The issue at this stage in the proceedings is whether a common question exists, not whether plaintiff has prevailed on that ad-

mittedly common issue. Thus, Fed.R.Civ.P. 23(a)(2) is satisfied.

■ The question whether the named plaintiff's claims are typical of those of the class necessitates an examination of the relationship between Lewis' claim and that of the class. Certification is proper unless the named plaintiff presents a unique claim personal to him which is likely to be a major focus of litigation. *See Patterson v. General Motors Corp.,* 631 F.2d 476, 481 (7th Cir.1980), *cert. denied,* 451 U.S. 914, 101 S.Ct. 1988, 68 L.Ed.2d 304 (1981); *Koos v. First National Bank of Peoria,* 496 F.2d 1162, 1164 (7th Cir.1974). Given our redefinition of the class to include only those dischargees returned to the CCDOC jail for release, plaintiff's claim is typical of the claims of putative class members. As noted earlier, plaintiff's claim is essentially that the probable cause requirement of the fourth amendment, as applied to the states through the due process clause of the fourteenth amendment, mandates immediate release when a judicial officer has determined that no probable cause exists to hold a prisoner. This claim is not unique to plaintiff. If plaintiff is able to demonstrate that a policy, practice, or custom exists, his claim will be coextensive with that of the class. Thus, the typicality requirement of Rule 23(a)(3) is satisfied.

■ The final requirement of Fed.R.Civ.P. 23(a) is that the representative party will fairly and adequately represent the interests of the class. This inquiry has two components. First, the named plaintiff must have interests in the outcome sufficient to ensure vigorous advocacy on behalf of the class while having no interests antagonistic to those of the class, and second, counsel for the named plaintiff must be capable of competent and loyal representation of the interests of the class. *See General Telephone Co. v. Falcon,* —— U.S. ——, 102 S.Ct. 2364, 2371 n. 13, 72 L.Ed.2d 740 (1982); *Senter v. General Motors Corp.,*

---

**6.** As noted above at p. 372, because count V does not address the issue of the release of prisoners discharged at the First District courts,

we read plaintiff's proposed class as including only prisoners discharged at outlying districts.

532 F.2d 511, 524–25 (6th Cir.), *cert. denied,* 429 U.S. 870, 97 S.Ct. 182, 50 L.Ed.2d 150 (1976). Plaintiff's alleged injury as a result of defendants' conduct ensures that he will vigorously pursue the claim that defendants' practices violate the probable cause requirement of the Constitution. As for the claim for injunctive relief, we can think of no person better situated to prosecute the class claim than one who has been subjected to the allegedly improper practice in the past. Plaintiff is certainly within the class of people who may in the future be subjected to defendants' alleged practice; if he cannot challenge it, no one can. And while defendants suggest that plaintiff may be inclined to sell the class short in order to settle his damage claim, thus abandoning vigorous advocacy of the class claims, we can only note that Fed.R.Civ.P. 23(e) provides that no class action may be dismissed or compromised without court approval. Finally, plaintiff's counsel, Harvey Melinger, Esq., has pursued this and other class actions before this court in a loyal and competent manner. He is well qualified to represent the plaintiff class in this action.

Because the requirements of Rule 23(a) have been .satisfied, certification may be obtained if the provisions of one of the three subdivisions of Rule 23(b) are met. Plaintiff seeks certification only under Rule 23(b)(2), which permits certification where defendants have acted on grounds generally applicable to the class making final injunctive relief or corresponding declaratory relief appropriate with respect to the class as a whole. Here plaintiff alleges that defendants have established a policy or practice which they follow when a judge in an outlying district of the Circuit Court of Cook County discharges a prisoner previously held by the CCDOC. Keeping in mind that we may not deny class certification because of our view of the merits of plaintiff's case, at this stage of the proceedings plaintiff's allegation, which finds some support in the evidence, that defendants have adopted a policy which harms the class as a whole satisfies Rule 23(b)(2).[7] And, if plaintiff's class allegations are proved, injunctive or declaratory relief will be available to the class. *See generally Alliance to End Repression v. Rochford,* 565 F.2d 975, 979 (7th Cir.1977).

 The fact that plaintiff seeks damages for his alleged treatment by defendants as well as for other allegedly improper actions by various defendants does not preclude class certification. As to the class claims, the sole relief requested is injunctive relief; thus, (b)(2) certification is proper. *See* 7A C. Wright & A. Miller, *Federal Practice and Procedure* § 1775 at 22 n. 31 (1972 & Supp.1982) (citing cases).

Plaintiff's motion for class certification is granted. Count V is certified as a class action on behalf of all persons who are now or may in the future be held in custody in the Cook County Department of Corrections jail and who are discharged by any judge sitting at any location in Cook County other than the First District of the Circuit Court of Cook County but are returned to the Cook County Department of Corrections jail for release.

---

7. If it should appear as the case progresses that defendants' alleged policy differs from district to district, subclassing may be necessary. *See* Fed.R.Civ.P. 23(c)(4)(B).