Kareem **FAHEEM–EL**, on his own behalf and on behalf for all others similarly situated, Plaintiff,

v.

Paul **KLINCAR**, Chairman, Illinois Prison Review Board, Michael Lane, Director, Illinois Department of Corrections, Harold Thomas, superintendent, Adult Community Services, Phillip Hardiman, Director of the Cook County Jail, Defendants.

No. 84 C 2561.

United States District Court, N.D. Illinois, E.D.

Dec. 4, 1984.

Thomas Peters, Murphy, Peters, Davis & O'Brien, Chicago, Ill., for plaintiff.

Thomas A. Ioppolo, Asst. Atty. Gen., Chicago, Ill., for defendants.

### MEMORANDUM AND ORDER

MORAN, District Judge.

Plaintiff Kareem Faheem-el brought this action under 42 U.S.C. § 1983 and 28 U.S.C. § 2254 on his own behalf and on behalf of all others similarly situated. He attacks the parole revocation procedures in Illinois. Specifically, he attacks the adequacy of the preliminary parole revocation hearings, the constitutionality of the state's refusal to grant bail or service credit to accused parole violators, and the timeliness of final parole revocation hearings. Before the court are plaintiff's motions for class certification and a preliminary injunction.

### I. Background

Plaintiff was sentenced in 1973 to a term of 30–90 years imprisonment for murder. He was paroled from Stateville Correctional Center on October 5, 1983. On January 23, 1984, he was arrested for the alleged possession of cocaine and sent to Cook County Jail. He was served on February 7, 1984, with a notice charging violation of his parole and a preliminary revocation hearing was held on March 1, 1984. Plaintiff alleges that in his preliminary parole revocation hearing no prosecution witnesses were produced for cross examination. He claims that the preliminary hearing officer read silently from his file and allowed plaintiff to make a statement, but refused to allow plaintiff to offer testimony from an eyewitness to the events leading to his

arrest. The hearing officer found against plaintiff. Plaintiff was incarcerated and, as a parolee accused of violating his parole, was not entitled to bail. *See People ex rel. Tucker v. Kotsos,* 68 Ill.2d 88, 11 Ill.Dec. 295, 368 N.E.2d 903 (1977). No final parole revocation hearing has been held and plaintiff has been notified that none will be held until disposition of the pending criminal case.

This action was brought in four counts. Count I seeks withdrawal of the parole violation charge or, in the alternative, an immediate final revocation hearing, an immediate bond hearing, and damages. Count II seeks compensatory and punitive damages. Count III seeks an immediate final parole revocation hearing, credit against plaintiff's parole term for each day spent incarcerated while waiting for the final parole revocation hearing, and both compensatory and punitive damages. Count IV, the class action count, seeks prompt final revocation hearings, procedurally proper preliminary parole revocation hearings, parole time credit for all incarcerated parolees awaiting a final parole revocation hearing, release of all parolees not offered bail hearings, and costs and attorneys' fees.

As this description makes apparent, this action is a multifaceted class attack upon Illinois parole revocation procedures. Unfortunately, the breadth of the action has not been matched by the depth of the briefs, and this court has, accordingly, in several instances and with some trepidation, analyzed the issues in a manner not discussed or only briefly discussed by the parties.

## II. *Preiser v. Rodriguez*

Before the court delves into the issues presented by plaintiff, it must determine how to characterize this action. Plaintiff, in his complaint, labels it as "a 1983 action and a habeas corpus action." He claims his constitutional rights were violated by the state. He also seeks, at least in part, procedures that could hasten his release and, if those procedures are not forthcoming, a writ of habeas corpus requiring his release. The action, as defined by plaintiff, is a hybrid. In *Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), the Supreme Court held:

> [W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus.

*Id.* at 500, 93 S.Ct. at 1841. That, of course, raises exhaustion issues, issues raised by the defendants but never addressed by plaintiff.

▮ When plaintiff seeks his release, his action must be brought as a habeas action. *Id.* at 486, 93 S.Ct. at 1834. When he seeks addition of service credits, the action must be brought as a habeas action. *Id.* Additionally, when plaintiff seeks reconsideration of a decision that could result in his release, the claim must be brought within a habeas action. *See Smallwood v. Missouri Board of Probation and Parole,* 587 F.2d 369 (8th Cir.1978) (reconsideration of parole denial only properly brought as habeas).[1] Plaintiff here attacks the procedural validity of a hearing that has already

---

1. *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), the basis for plaintiff's constitutional claims, was brought as a habeas action. In *Morrissey,* plaintiff attacked the procedural sufficiency and promptness of his parole revocation hearings. In *Preiser,* the court specifically mentioned *Morrissey* as being within the contours of a habeas action as it has developed within this country. 411 U.S. at 485–86, 93 S.Ct. at 1833–34. The court, in *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), indicated that a request for hearing, which may eventually lead to release, while not asking for release itself, need not be brought as a habeas action. *Id.* at 107 n. 6, 95 S.Ct. at 859 n. 6. In *Gerstein,* however, the court made it clear that plaintiff there had not sought release, even as an alternative remedy. Here plaintiff specifically sseks his release as an alternate remedy. In addition, plaintiff in *Gerstein* sought prospective relief only, *i.e.,* the commencement of a probable cause hearing. Such relief is not foreclosed by *Preiser. See Wolff v. McDonnell,* 418 U.S. 539, 554–55, 94 S.Ct. 2963, 2973–74, 41 L.Ed.2d 935 (1974).

been held. He also seeks parole time credit already allegedly earned and challenges the state's failure to give him a prompt final revocation hearing. Many of plaintiff's claims, therefore, must be brought by a habeas petition.

■ Plaintiff's claims for damages or prospective relief, however, can be brought concurrently under sec. 1983. *See Wolff v. McDonnell*, 418 U.S. 539, 554–55, 94 S.Ct. 2963, 2973–74, 41 L.Ed.2d 935 (1974); *Preiser v. Rodriguez*, 411 U.S. at 499 n. 14, 93 S.Ct. at 1841 n. 14. *See also Martin v. Strasburg*, 689 F.2d 365 (2d Cir.1982). As the court said in *Preiser v. Rodriguez*, the requirement that certain claims be brought by plaintiff under federal habeas corpus "in no way precludes him from simultaneously litigating in federal court, under sec. 1983, his claim" not cognizable in a habeas action. 411 U.S. at 499 n. 14, 93 S.Ct. at 1841 n. 14. The court must, then, in effect divide up this action, parceling all the claims falling under the rubric of *Preiser v. Rodriguez* into a habeas action and all outside the scope of that decision into a sec. 1983 action. This division is necessitated by the strong federal policy of requiring exhaustion of state remedies before addressing habeas claims. *See Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); *Preiser v. Rodriguez*, 411 U.S. at 490, 93 S.Ct. at 1836.

In Count I plaintiff seeks withdrawal of his parole violation charge. This, in effect, is an attack on his detention pursuant to the parole violation charge, as the withdrawal would lead to his immediate release. That claim, accordingly, must be brought in a habeas action. *See generally, Morrissey v. Brewer, supra*. The request in Count I for a bond hearing and a prompt final revocation hearing seeks prospective relief and, therefore, can remain in the sec. 1983 action. *See Wolff v. McDonnell*, 418 U.S. at 554–55, 94 S.Ct. at 2973–74. The claims for damages and fees are also the stuff of sec. 1983 actions, not a habeas petition. Count II, seeking only damages, also remains. Count III's prayer, for an award of good time credit for time already spent, is

properly a habeas claim. A future final revocation hearing; damages, costs and attorneys' fees; and, arguably, prospective awards of good time credit, may properly be sought in the sec. 1983 action.

■ Count IV's class allegations do not require that claims cognizable only in a habeas action be dismissed. Habeas claims can be maintained as representative actions, *see Bijeol v. Benson*, 513 F.2d 965 (7th Cir.1975); *also Martin v. Strasburg*, 689 F.2d 365 (2d Cir.1982); *United States ex rel. Sero v. Preiser*, 506 F.2d 1115 (2d Cir.1974), *cert. denied*, 421 U.S. 921, 95 S.Ct. 1587, 43 L.Ed.2d 789 (1975), though restricted in scope and availability. *See Bijeol v. Benson, supra*. The claims for prospective relief within Count IV are not properly within the habeas claim, *see Martin v. Strasburg*, 689 F.2d at 374; *Smallwood v. Missouri Board of Probation and Parole*, 587 F.2d at 371, and thus can remain in the sec. 1983 action. The requests in Count IV for an award of good time credits already allegedly earned and for release, however, are properly brought in a habeas action.

■ Before determining whether the habeas claims brought in the complaint can be so maintained, however, the court must now determine whether plaintiff has wholly exhausted his state remedies before bringing the habeas claims in this action. Defendants contend that plaintiff has not exhausted his state remedies and the court agrees. The Supreme Court of Illinois has held that "*mandamus* will lie to enforce the accused parole violator's right to a reasonably prompt final revocation hearing." *People ex rel. Tucker v. Kotsos*, 68 Ill.2d 88, 99, 11 Ill.Dec. 295, 300, 368 N.E.2d 903, 908 (1977). *See People ex rel. Johnson v. Pate*, 47 Ill.2d 172, 177, 265 N.E.2d 144, 147–48 (1970). *Mandamus* is a proper route to compel public officials to comply with statutory or constitutional duties. *Gordon v. Department of Transportation*, 109 Ill.App.3d 1071, 1075, 65 Ill.Dec. 589, 592, 441 N.E.2d 904, 907 (2d Dist. 1982); *Overend v. Guard*, 98 Ill.App.3d 441, 443, 53 Ill.Dec. 940, 942, 424 N.E.2d

731, 733 (4th Dist.1981). It is, consequently, also the proper route to mandate a new preliminary revocation hearing with proper due process safeguards, and to seek the award of already earned parole time credits. This is especially so in light of the fact, as discussed, *infra,* that the *Morrissey* safeguards sought by plaintiff are mandated by the Parole Board's own rules. *See* Illinois Prisoner Review Board, *Rules Governing Parole,* at 13. Should a plaintiff find a request for a hearing within a reasonable time disregarded, or mandated procedures not followed, "it would appear to be an appropriate circumstance for trial court relief under a writ of mandamus directing the parole and pardon board to comply with the provisions of its own [rules]." *People ex rel. Johnson v. Pate,* 47 Ill.2d at 177, 265 N.E.2d at 148.

 It is not clear that all plaintiff's habeas claims could be addressed through *mandamus,* and possibly seeking *mandamus* for some of the claims might be futile. Futile acts are not required to satisfy the exhaustion requirement. *See generally Heirens v. Mizell,* 729 F.2d 449, 457 (7th Cir.1984). But a *mandamus* action seeking a preliminary hearing consistent with due process, or a prompt final revocation hearing, or the award of improperly denied good time credits would not necessarily have been futile and exhaustion is required. Because at least some of the claims were not exhausted, the court must dismiss the habeas claims for failure to exhaust. *See Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); *United States ex rel. Clauser v. Shadid,* 677 F.2d 591, 594 (7th Cir.1982). The sec. 1983 claims, however, need not suffer the same fate. "If a prisoner seeks both release from confinement and damages or injunctive relief in an action under sec. 1983, the court may properly dismiss the former claim while maintaining the latter." *Ybarra v. Reno Thunderbird Mobile Home Village,* 723 F.2d 675, 681–82 (9th Cir.1984). *Accord Smallwood v. Missouri Board of Probation and Parole,* 587 F.2d at 371.

### III. Class Certification

Because some of the class-based claims in Count IV survive, the court must decide the motion for class certification. The class sought to be certified can be described as all persons who are presently, or will be in the future, incarcerated for parole violations without the opportunity for a proper preliminary parole revocation hearing, a prompt final parole revocation hearing, or an opportunity for release on bail pending a final parole revocation hearing. The question presently before the court is whether this case is suitable for classwide determination. Before addressing the Rule 23 considerations, the court must address the Article III requirements of mootness and standing.

### A. Article III

 Article III of the Constitution requires that those who seek to invoke the jurisdiction of the federal courts satisfy the threshold requirement of alleging an actual case or controversy. Parties are required to show a personal stake in the outcome to "assure that concrete adverseness which sharpens the presentation of issues" necessary for proper resolution of constitutional questions, *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). Plaintiffs must show more than an abstract injury; they must show they have sustained or are immediately in danger of sustaining a direct injury which is real and immediate rather than conjectural or hypothetical. *See City of Los Angeles v. Lyons,* 461 U.S. 95, 101–2, 103 S.Ct. 1660, 1664–65, 75 L.Ed.2d 675 (1983).

In the present case, plaintiff is currently incarcerated as an alleged parole violator. He cannot, however, challenge the fact of his present incarceration in this action because he has not properly exhausted his state *mandamus* remedies. Neither can he challenge the adequacy of his preliminary revocation hearing because that hearing has already occurred and such a claim is appropriately brought within a habeas action. Thus, the injunction he seeks regarding issues in the habeas action cannot

salve his present wounds with respect to those issues. That raises a standing question. In addition, plaintiff's criminal case will eventually be decided, resulting either in his release or a valid incarceration on the criminal charge. And that raises a mootness question. These two questions, interrelated as they are, must be considered.

■ The Supreme Court has created a two-pronged mootness investigation. First, a court must determine whether the parties have a legally cognizable claim; that is, whether the action is still alive. *See United States Parole Commission v. Geraghty,* 445 U.S. 388, 396, 100 S.Ct. 1202, 1208, 63 L.Ed.2d 479 (1980); *Lewis v. Tully,* 96 F.R.D. 370 (N.D.Ill.1982). In *Lewis,* for example, Judge Marshall certified a class of all persons held in custody within Cook County after their discharge by a judge. Though the complained-of incarcerations lasted only a few hours, the court found that because members of the class were continually being illegally detained a live controversy existed. *Id.* at 373. In the present case plaintiff is currently incarcerated. Other members of the class are presently incarcerated or will also be incarcerated pursuant to Illinois law. As demonstrated in the depositions, the Cook County Correctional Center has a definite policy not to allow witnesses, either for presentation or cross examination by plaintiff. Final revocation hearings are being delayed until trial. Parole violators are not allowed bail. Incarcerations will continue without allegedly required due process precautions. A live case exists.

■ The second prong of the mootness test—as analyzed by the courts in *Geraghty* and *Lewis*—is where the plaintiff retains "a personal stake" in the outcome of the litigation. *See Geraghty, supra,* 445 U.S. at 396, 100 S.Ct. at 1208. Generally, in a class action, the class representative at the time of class certification must have Article III standing. When the claim, however, is considered "capable of repetition yet evading review," the class litigation can continue despite the representative party's loss of a personal stake in the outcome. In

*Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), for example, a case dealing with pretrial detentions and, consequently, a time frame generally identical to that in the present suit, the court found a class action permissible even though the representative parties no longer had an interest in the suit. The court wrote:

> Pretrial detention is by nature temporary, and it is not unlikely that any given individual could have his constitutional claim decided on appeal before he is either released or convicted. The individual could nonetheless suffer repeated deprivations, and it is certain that other persons similarly situated will be detained under the allegedly unconstitutional procedures. The claim, in short, is one that is distinctly "capable of repetition, yet evading review."

*Id.* at 110, n. 11, 95 S.Ct. at 861, n. 11. The court in *Gerstein* also placed stock in the "constant existence of a class of persons suffering a deprivation." *Id.* In *Lewis,* the court certified a class, the members of which were detained only for short intervals and had no expectation of being further detained. The class was allowed despite the fact that the representative parties no longer had a live dispute. As the court stated in *Geraghty,* "when the claim on the merits is 'capable of repetition, yet evading review,' the named plaintiff may litigate the class certification issue despite loss of his personal stake in the outcome of the litigation." 445 U.S. at 398, 100 S.Ct. at 1209. *See also Schall v. Martin,* —— U.S. ——, 104 S.Ct. 2403, 2405, n. 3, 81 L.Ed.2d 207 (1984) (citing *Gerstein v. Pugh,* to allow class of juvenile pretrial detainees).

■ Though the court finds no mootness problem, the issue of standing still needs to be addressed. In *City of Los Angeles v. Lyons,* 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983), the court seemed to put a limit on the "capable of repetition" doctrine by stating that *Lyons'* claim "remains to be litigated in his suit for damages; in no sense does that claim

evade review." *Id.* at 109, 103 S.Ct. at 1669. The present action also seeks damages. The court in *Lyons,* however, apparently did not create a rigid rule requiring that a plaintiff seek only injunctive relief to fit within the "capable of repetition" doctrine. Instead, the court held that to allow standing under that doctrine plaintiff must make a reasonable showing that he will again be subject to the alleged illegality. In *Lyons,* such proof required evidence that (1) the plaintiff would again be in the same situation; and (2) that defendants, acting pursuant to a state policy, would again act in violation of plaintiff's constitutional rights. *Id.* at 105–6, 103 S.Ct. at 1666–67.

In the present case plaintiff can make such a showing. In the evidence presented plaintiff showed that, at least at the Cook County Correctional Center, defendants have a policy of forbidding the presentation or cross examination of witnesses at preliminary parole revocation hearings. Defendants also have a policy of not holding final revocation hearings until after disposition of the criminal trial. Finally, the state has a policy of refusing to allow bail for those accused of parole violations. There is also a strong possibility that plaintiff again will be subject to the procedures complained of in this action. If plaintiff wins his criminal trial, or his final parole revocation hearing, he will again be on parole. Any alleged violation, real or imaginary, will again subject him to potentially unconstitutional procedures. The Supreme Court accepted the estimate that 35 per cent to 45 per cent of parolees were subjected to revocation and return to prison. *See Morrissey v. Brewer,* 408 U.S. at 471, 92 S.Ct. at 2593. An even greater number comes in contact with the parole revocation procedures without eventually again ending up in prison. Thus, there appears to be a good chance that plaintiff will, in the future, be subject to the Illinois procedures complained of. The Court has not required certainty that plaintiff will again be subject to these procedures, only a "credible threat." *See Kolender v. Lawson,* 461 U.S. 352, 355 n. 3, 103 S.Ct. 1855, 1857 n. 3,

75 L.Ed.2d 903 (1983) (a citizen stopped 15 times pursuant to statute has a "credible threat" he will be detained again); *Steffel v. Thompson,* 415 U.S. 452, 458–60, 94 S.Ct. 1209, 1215–16, 39 L.Ed.2d 505 (1974) (two warnings sufficient for standing to challenge statute). Plaintiff faces a credible threat that he will again be challenged. The requirements in *Lyons* appear to be met.

Further, *Lyons* did not involve a class action. As the court in *Lewis v. Tully* pointed out, there are significant differences between an individual action, as existed in *Lyons,* and a class action, as existed in *Lewis. Lewis v. Tully,* 99 F.R.D. 632, 638–39 (N.D.Ill.1983). In *Lyons,* the court held that the live controversy ended when application of the chokehold on plaintiff was ended. In *Lewis* and the present case, a controversy continues to exist as the class members continue to be incarcerated for alleged parole violations.

*Lyons,* however, has convinced a court in this district to find no standing in a case remarkably similar to the present one. In *Trotter v. Klincar,* 566 F.Supp. 1059 (N.D. Ill.1983), plaintiff, in a class action, attacked the procedural validity of his preliminary parole revocation hearing. The court, citing *Lyons,* found no standing. In *Trotter,* however, plaintiff had already been convicted and was therefore no longer on parole. *Id.* at 1062. The court found there was little likelihood of plaintiff again being subject to the allegedly unconstitutional preliminary hearing procedures. *Id. Trotter* is distinguishable from the present case. In the present case plaintiff is still currently incarcerated without having had a final revocation hearing; thus his case is still alive. In addition, this court, in disagreement with the court in *Trotter,* finds that plaintiff has a good chance of again being subjected to the complained-of procedures, as discussed previously. Finally, the court in *Trotter* failed to acknowledge the difference between individual actions as in *Lyons,* and class actions. The court finds that standing does exist. Article III is not a bar to certification of this class.

B. *Rule 23*

██ Having determined that Article III permits the certification of a class, we must consider the requirements of Rule 23. Initially, the court notes that this would be a 23(b)(2) class because plaintiff seeks injunctive and declaratory relief generally applicable to the class as a whole. The burden of proving suitability of a class is on plaintiff. *Eggleston v. Chicago Journeymen Plumbers Local Union No. 130,* 657 F.2d 890, 895 (7th Cir.1981). The court finds the Rule 23 requirements satisfied in this case.

██ Rule 23(a) lists four prerequisites for an action to proceed as a class. First it requires the class to be so numerous that joinder is impracticable. It is not clear how large this class actually is, but, including all persons now on parole or incarcerated for alleged parole violations pending a final parole revocation hearing, it is apparently too large for joinder. For example, there were 3,442 parole revocation cases in Illinois in 1983. Though the class size is indeterminate, the numerosity requirements are met. *See Grossman v. Waste Management, Inc.,* 100 F.R.D. 781, 785 (N.D.Ill.1984).

██ The Rule also requires common issues of law or fact. There must be at least one common element between all members. *See Borowski v. City of Burbank,* 101 F.R.D. 59, 62 (N.D.Ill.1984). Common questions of fact exist concerning the procedures actually followed by the state, at least in defined geographical areas, as more fully discussed below. Common questions of law exist concerning the constitutionality of the state's handling of those accused of violating their parole.

██ The third requirement, somewhat linked to the second, is that claims or defenses of the representative parties must be typical. The Seventh Circuit has held that typicality requirements are satisfied if all claims arise from the same event or practice or course of conduct. *De La Fuente v. Stokely-Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir.1983). Here the alleged unconstitutional course of conduct is the basis for the claims of all the class members.

██ Finally, plaintiff must be found to be a fair and adequate class representative. Plaintiff, in the present case, has been subjected to all the practices he claims are unconstitutional. He is currently incarcerated, possibly as a result of these practices. The adequacy of the class representative "turns on the proposed representative's interest in the outcome and the capability of his counsel. We think that plaintiff's past injury, as a result of the alleged practice, suffices to establish that he is a proper representative." *Lewis v. Tully,* 99 F.R.D. at 644.

██ While class certification is warranted, the scope of the appropriate class depends on the nature of the claim. Plaintiff was arrested in Cook County and his preliminary parole revocation hearing was held at the Cook County Jail. He attacks practices at that facility which are, on the basis of the present record, violative of the Illinois Prisoner Review Board's Rules Governing Parole. Nothing in the present record suggests that the hearing procedures followed at the Cook County Jail are those followed elsewhere in the state, or that there is, elsewhere, any departure from the promulgated Rules Governing Parole. Plaintiff is presently incarcerated in a Department of Corrections facility in this district, awaiting trial in Cook County and a subsequent final parole revocation hearing. The record in support of class certification is remarkably sparse on the length of time a diligent defendant may be expected to remain in prison pending trial, and therefore a subsequent final parole revocation hearing on a Cook County charge. There is virtually nothing to indicate the expectable length of time between charge and hearing elsewhere in the state. The requisite commonality and typicality on those two issues has not been demonstrated beyond Cook County, and the class, on those two issues, is, accordingly, confined to persons subject to Cook County charges. That does not mean, however, that the

practical effect of relief to a Rule 23(b)(2) class so restricted would not in large measure inure to the benefit of others in the state. *See* 3B Moore's Federal Practice, pp. 23–298 and 23–299 (2d ed.). Finally, it appears undisputed that bail denial is mandated by state law, thus making a statewide class appropriate.

## IV. *Preliminary Injunction*

We turn, then, to plaintiff's motion for preliminary injunction. Plaintiff raises three claims for injunctive relief: (1) defendants' inadequate preliminary parole revocation hearing procedures; (2) defendants' untimely final parole revocation hearings; and (3) defendants' refusal to allow bond for accused parole violators.

■ In granting or denying a preliminary injunction, a court must examine four factors: (1) whether the plaintiff has at least a reasonable likelihood of success on the merits; (2) whether the plaintiff will have an adequate remedy at law or will be irreparably harmed if the injunction does not issue; (3) whether the threatened injury to the plaintiff outweighs the threatened harm the injunction may inflict on defendant; and (4) whether the granting of the preliminary injunction will disserve the public interest. *Martin v. Helstad,* 699 F.2d 387, 389 (7th Cir.1983); *Moore v. Miller,* 579 F.Supp. 1188, 1191 (N.D.Ill.1983). Plaintiff bears the burden of persuasion as to the granting of the preliminary injunction. *Ciechon v. City of Chicago,* 634 F.2d 1055, 1057 (7th Cir.1980).

### 1. *Likelihood of Success on the Merits*

#### (a) *Preliminary Revocation Hearing*

■ In *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), the Supreme Court laid out the due process requirements for a preliminary parole revocation hearing.

[The minimum requirements of due process] include (a) written notice of the claimed violation of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the fact finders as to the evidence relied on and reasons for revoking parole.

*Id.* at 489, 92 S.Ct. at 2604. The validity of the procedural safeguards have been acknowledged by the Illinois Prisoner Review Board in their rules governing parole. Those rules echo the requirements of *Morrissey.* For example, the rules state:

At the preliminary hearing, the parolee may appear and speak in his own behalf; he may bring letters, documents, or individuals who can give relevant information to the hearing officer. On request of the parolee, persons who have given adverse information on which parole revocation is to be based shall be made available for questioning in his presence.

Illinois Prison Review Board, *Rules Governing Parole* at 13.

Plaintiff alleges that he was denied the opportunity to present his own witnesses or cross examine adverse witnesses at his preliminary parole revocation hearing. In the depositions he presents, Philip Hardiman, Executive Director of the Cook County Department of Corrections, and Robert Guthrie, Parole Revocation Hearing Officer at Cook County Jail, testified to the policy forbidding the testimony of witnesses at preliminary parole revocation hearings. Mr. Hardiman stated that, for security reasons, witnesses were not allowed at hearings in the Cook County Jail. That is apparently so even if the preliminary hearing on the criminal charge rested on hearsay or there was no preliminary hearing at all. Mr. Guthrie testified that he was informed in 1983 that witnesses would not be allowed in the hearings for security reasons. Mr. Guthrie also stated that if a police report stated that a parolee had committed

a crime, and the parolee denied it, the police report would carry more weight (Guthrie dep. at 29–31).

These policies are directly contrary to the teachings of *Morrissey,* and therefore violate due process. In addition, by being violative of the Board's own rules, as they are, the appearance of arbitrariness is enhanced. *See Lawrence v. Smith,* 451 F.Supp. 179 (W.D.N.Y.1978). Defendants offer two defenses. First, defendants claim that they satisfied the *Morrissey* due process requirement by means of plaintiff's preliminary hearing. Defendants have not presented evidence that plaintiff did in fact receive a preliminary hearing. Even if he did, it is far from clear that the preliminary hearing satisfied the *Morrissey* due process requirements, although it may well be that preliminary hearings often do satisfy the *Morrissey* dictates for a preliminary parole revocation hearing. Due process rights are severely limited in preliminary hearings. *See People v. Blackman,* 91 Ill. App.3d 130, 46 Ill.Dec. 524, 414 N.E.2d 246 (2d Dist.1980). In any event, the policy complained of extends to those class members whose parole was revoked without the initiation of criminal proceedings. The presence of a preliminary hearing for certain class members, therefore, does not obviate the constitutional violation.

Defendant also claims that the security interests claimed are strong enough to override the due process concerns of *Morrissey.* The court in *Morrissey* did permit restrictions upon confrontation for good cause. *See Morrissey v. Brewer,* 408 U.S. at 489, 92 S.Ct. at 2604. The court there, however, was concerned with the disclosure of the identity of informants and the consequent danger to the informants that could follow. *Id.* at 487, 92 S.Ct. at 2603. General security measures applicable to each hearing, rectified with assignment of a single guard (Hardiman dep. at 15), would not fall into this category. The defendants do not indicate how some examination and cross examination of witnesses at a preliminary parole revocation hearing poses security risks differing from those presented at a public trial, or why the rules governing the revocation hearings should be ignored. In light of the evidence presented, the court finds it likely that plaintiff will succeed on the merits of his claim regarding procedures followed within preliminary parole revocation hearings.

#### (b) *Refusal to Allow Bond for Accused Parole Violators*

At this time the court refuses to address this claim. The Supreme Court of Illinois has held the refusal to grant bail to be constitutional. *See People ex rel. Tucker v. Kotsos,* 68 Ill.2d 88, 11 Ill.Dec. 295, 368 N.E.2d 903 (1977). This issue is a difficult one, made even more so by the recent Supreme Court decision, *Schall v. Martin,* — U.S. ——, 104 S.Ct. 2403, 81 L.Ed.2d 207 (1984), allowing pretrial detention of juveniles. Parolees, like juveniles, can be considered "always in some form of custody," *id.* 104 S.Ct. at 2410, and it is not clear what effect this decision has on the issue. In its June 11, 1984 memorandum in this case, the court labeled defendants' memorandum "cursory". No additional briefing has been filed. The two paragraphs filed by defendants regarding this issue are not sufficient. Defendants are ordered to reply to plaintiff's memorandum with a full discussion of the issue. Plaintiff can then respond. The decision on the issue awaits further briefing.

#### (c) *Final Revocation Hearings*

Plaintiff also challenges the practice of delaying final revocation hearings until after disposition of the underlying criminal action. In *Morrissey,* the court held that a final revocation hearing must be held within a reasonable time during incarceration. 408 U.S. at 488, 92 S.Ct. at 2603. The court stated that two months was not an unreasonable time. *Id.* Plaintiff alleges that in cases where a criminal violation is involved, Illinois currently waits until disposition of the underlying criminal action before holding a final revocation hearing. Plaintiff claims that such a delay is unreasonable. The Illinois policy is not an un-

usual one. *See* Merritt, *Parole Revocation: A Primer*, 11 Tol.L.Rev. 893, 900–04 (1980). In many cases the policy works to the favor of the parolee. *See id.* at 903; *People v. Golz*, 53 Ill.App.3d 654, 11 Ill. Dec. 461, 368 N.E.2d 1069 (2d Dist.1977).

The Seventh Circuit has discarded a *per se* rule regarding the maximum delay before initiation of a final parole revocation hearing in favor of a more flexible case-by-case analysis. *See United States ex rel. Sims v. Sielaff*, 563 F.2d 821, 828 (7th Cir.1977). The court in *Sims* held that the crucial aspect in determining whether a final parole revocation hearing was unconstitutionally delayed, in conformity with *Moody v. Daggett*, 429 U.S. 78, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976), was prejudice. The court in *Sims* held that the test laid out in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), applying to speedy trial violations, was applicable to the timeliness of final revocation hearings. 563 F.2d at 828. *See Hanahan v. Luther*, 693 F.2d 629, 634–35 (7th Cir.1982), *cert. denied*, 459 U.S. 1170, 103 S.Ct. 815, 74 L.Ed.2d 1013 (1983). In *Barker*, the court created a balancing test with four factors: the length of delay, the reasons for the delay, the defendant's assertions of his rights; and prejudice to the defendant. 407 U.S. at 530, 92 S.Ct. at 2192. Prejudice can be assessed in light of three separate interests: (1) the prevention of oppressive incarceration; (2) the minimization of anxiety for the accused; and (3) the limitation of impairment to the defense. *Id.* at 532, 92 S.Ct. at 2193. *See Hanahan v. Luther*, 693 F.2d at 634–35. In *Hanahan*, the court carefully applied the *Barker* criteria to a delay in a final parole revocation hearing. Such application in the present case is hampered substantially by class allegations.

i. As to length, the Illinois policy is not specific. The delay in holding a final revocation hearing can range anywhere from a minimal period, *e.g.*, when a guilty plea is offered to the criminal charge, to a year or more. The Seventh Circuit has held that three months can be considered the outside limit of reasonableness, *see United States*

*ex rel. Sims v. Sielaff*, 563 F.2d at 825, and that four months raises a due process question, *see Hanahan v. Luther*, 693 F.2d at 634. Thus, it appears that any delay of over three months can constitute a due process violation if the other factors show that such a finding is warranted.

ii. The reasons for delay are twofold. The respondents delay the hearing until after the trial. Plaintiff argues that Illinois has a 120-day speedy trial law, *see* Ill.Rev.Stat. ch. 38, § 103–5, and that any delays of the trial are attributable to defendant. That statute, however, allows an additional two months' delay at the state's discretion. *See* Ill.Rev.Stat. ch. 38, § 103–5(c). In addition, forcing a defendant to choose, if such is the case, between a prompt chance to be released from incarceration or a well prepared defense to a criminal charge, complete with briefed motions, may well infringe sixth and fourteenth amendment rights. The state may delay the hearing for a substantial period solely to make the trial the main evidentiary event. On the other hand, as indicated in *People v. Golz, supra*, a defendant may well concur in, indeed welcome, making the criminal trial the main event, where the state's burden of proof is beyond a reasonable doubt, in the reasonable belief that the state will accept the outcome of that trial as determinative of the revocation issue.

iii. A major question is whether plaintiff asserted his right, *i.e.*, asked for a hearing. For the purpose of this litigation, the class can be divided into those that request a prompt hearing and those that do not. If a prompt hearing is not requested, whether for strategic or other reasons, it seems that the state's interest in having the trial be the main evidentiary event can be vindicated without prejudice to the defendant. If a parolee requests a prompt hearing, however, that is a strong factor in determining whether a prompt final revocation hearing is warranted.

iv. Prejudice exists. Members of the class are presently incarcerated. Their incarcerations are not bailable and stem from

the alleged parole violations. Delaying hearings severely prejudices defendants by requiring that they remain in jail until the hearings. The Seventh Circuit has held that a period of incarceration is cognizable prejudice, as indeed it is. *See Blake v. Katter*, 693 F.2d 677, 682 n. 4 (7th Cir.1982) (7 months).

We are left, then, with an open issue, of whether or not the state can refuse to grant bail, which has a substantial impact upon the prejudice suffered by alleged parole violators. For the present, however, that refusal is the law in this state. We are left, also, with very little factual development of the delay in hearings which a policy of awaiting trial results may cause. We do know, however, that a defendant who is incarcerated, who is denied bail, and who has in a timely manner sought a final parole revocation hearing, is entitled to be heard within three months from, at a minimum, his seeking that hearing. To that extent at least, the court finds that plaintiff will most likely prevail on the merits of his claim regarding the promptness of final revocation hearings.

### B. *Other Factors*

The other factors for preliminary injunction can be dealt with quickly. Plaintiff's imprisonment, if constitutionally improper, constitutes irreparable harm. It is clear that money cannot make up for the loss of freedom inherent in such incarceration. As Justice Powell has written concerning pretrial detention effects on both society and the accused:

> [The imprisonment of a parolee in a local jail] contributes to the overcrowing and generally deplorable state of those institutions. Lengthy exposure to those conditions "has a destructive effect on human character and makes the rehabilitation of the individual offender much more difficult." At times the result may even be violent rioting. Finally, lengthy pretrial detention is costly. The cost of maintaining a prisoner in jail varies from $3 to $9 per day, and this amounts to millions across the Nation. In addition,

society loses wages which might have been earned, and it must often support families of incarcerated breadwinners.

. . . .

> [T]he disadvantages for the accused who cannot obtain his release are even more serious. The time spent in jail awaiting trial has a detrimental impact on the individual. It often means loss of a job; it disrupts family life; and it enforces idleness. Most jails offer little or no recreational or rehabilitative programs. The time spent in jail is simply dead time. Moreover, if a defendant is locked up, he is hindered in his ability to gather evidence, contact witnesses, or otherwise prepare his defense. Imposing those consequences on anyone who has not yet been convicted is serious.

*Barker v. Wingo*, 407 U.S. at 520–21, 532–33, 92 S.Ct. at 2187, 2193 (footnotes omitted). The cost to the state is minimal. An additional guard when witnesses are requested, and prompt revocation hearings, when requested, do not appear to be excessive burdens. As stated in *Barker*, when a person is unfairly incarcerated, the public pays a high price.

### V. *Conclusion*

Preliminary relief is warranted to the extent discussed above. Plaintiff shall submit an injunctive order in conformity with this memorandum.

Finally, Kelvin Burton moves to intervene. While his situation is not identical to plaintiff's, as a parolee incarcerated for an alleged parole violation his situation is similar enough to allow intervention. Mr. Burton's claims include questions of law and fact in common with plaintiff's claims, satisfying the requirement of Rule 24(b)(2). Mr. Burton is permitted to intervene as to the class issues remaining in the sec. 1983 action. His motion for a temporary restraining order is denied for the reasons discussed.

For the foregoing reasons, the court certifies the classes as discussed above, and grants plaintiff's motion for preliminary

**1042**

injunction as to the preliminary and final parole revocation hearings in accordance with the limitations within this memorandum and order. The motion for preliminary injunction on the availability of bail for alleged parole violation awaits further briefing. Plaintiff's claims properly brought in a habeas action are dismissed for failure to exhaust. Kelvin Burton's motion to intervene is granted and his motion for a temporary restraining order is denied.